STATE of Wisconsin, Plaintiff-Respondent,

v.

Artist TURNER, Defendant-Appellant.†

Court of Appeals

*No. 95–1295–CR. Submitted on briefs January 2, 1996.—Decided February 13, 1996.*

(Also reported in 546 N.W.2d 880.)

†Petition to review denied.

169

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard L. Zaffiro* of Wauwatosa.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Jerome S. Schmidt*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J.   Artist Turner pled guilty to burglary, a Class C felony, § 943.10(1), STATS., and, as a result, faced a maximum sentence of ten years in prison and a $10,000 fine, *see* § 939.50(3)(c), STATS. Rather than send Turner to prison, the trial court sentenced Turner to participate in the Department of Corrections's Intensive Sanctions program for forty-eight months. As permitted by statute, the trial court also authorized the Department of Corrections to confine Turner for up to one year. Subsequently, the trial court entered an order extending that authorization for an additional year. Turner appeals from that order. We affirm.

## I.

The Intensive Sanctions program is governed by § 301.048, STATS., and rules promulgated by the Department of Corrections pursuant to the authority granted by § 301.048(10). The program was designed to be "[p]unishment that is less costly than ordinary imprisonment and more restrictive than ordinary probation or parole supervision," § 301.048(1)(a), and is operated as "a correctional institution," § 301.048(4)(b). The Intensive Sanctions "correctional

institution" is defined by the statute as a "Type 2 prison." Section 301.01(6), STATS. Traditional prisons—those specified in § 302.01, STATS.—are "Type 1" prisons. Section 301.01(5). Every participant entering into the Intensive Sanctions program under a court order "is a prisoner." Section 301.048(4)(a). Only convicted felons are eligible for the Intensive Sanctions program. Section 301.048(2).

A person may be sentenced to the Intensive Sanctions program for a period of time that does "not exceed the maximum term of imprisonment" to which the person could have been sentenced. Section 973.032(3)(a), STATS. Additionally, the statute directs the trial court to "provide a maximum period for placements" in a "Type 1" "prison or a jail, county reforestation camp, residential treatment facility or community-based residential facility." Sections 973.032(3)(b) & (c), 301.048(3)(a)1, 301.01(5), STATS. The "maximum period for placements"—that is, confinement of the Intensive Sanctions "prisoner" by the Department of Corrections—may not, as an initial matter, exceed one year, unless the "prisoner" consents. Section 973.032(3)(b).

Once given the authority to confine a participant in the Intensive Sanctions program, the Department of Corrections has discretion to confine the participant "for a shorter period than the maximum period specified by the court." Section 973.032(4)(a), STATS. The Department may order confinement as a sanction for, *inter alia*, "[a] violation of a state . . . statute" or the rules governing participation in the program. WIS. ADM. CODE § DOC 333.08(1)(a) & (d). This threat of confinement is used by the Department to ensure compliance by the participant with the program. *See* Patrick J. Fiedler, *Intensive Sanctions*, 65 WISCONSIN LAWYER 15, 16 (June 1992).

As noted, the reservoir of confinement time from which the Department may draw to ensure a participant's compliance with the Intensive Sanctions program is limited by the trial court's sentence, which sets the initial "maximum period for placements." Section 973.032(3)(b), STATS. Recognizing that some participants might need the threat of confinement time beyond that initial authorization, the legislature has allowed the Department to ask the trial court to extend the maximum period of placements for "a total, including the original period and all extensions, of 2 years or two-thirds of the maximum term of imprisonment that could have been imposed on the person, whichever is less." Section 973.032(4)(b). Here, as we have seen, the trial court initially authorized the Department to confine Turner for one year. When that period was nearly used up, the Department sought a one-year extension, which the trial court granted.

As required by § 973.032(4)(b), STATS., the trial court held a hearing on the Department's request to extend its authority to confine Turner. Although Turner was present at the hearing, the only person to testify was Turner's Intensive Sanctions agent. The agent told the trial court that Turner was placed in confinement by the Department for nine months plus ninety days when a search of Turner's residence turned up a pellet gun and stolen property, and that an additional year of authorized confinement time was thus necessary so that Turner could be "appropriately supervised" within the Intensive Sanctions program.[1]

The trial court granted the Department's request for an extension of its authority to confine Turner. The

---

[1] Receiving or concealing stolen property is made illegal by § 943.34, STATS. Possession of a firearm is a violation of the Intensive Sanctions Rules.

trial court noted that Turner would have no incentive to comply with the Intensive Sanctions rules if the Department lost its ability to further confine him because Turner was neither a parolee nor a probationer and could not, therefore, be sentenced to a "Type 1" prison. *See* § 301.048(4)(am), STATS. (those entering the Intensive Sanctions program as either parolees or probationers may have their parole or probation status revoked).[2]

## II.

Turner attacks the trial court's order on four overlapping grounds: he claims that there was insufficient evidence to support the extension of the Department's authority to place him in confinement; he argues that the trial court misused its discretion and violated his right to due process by selecting one year as the appropriate extension period; he contends that the statute authorizing the trial court to extend the maximum period for which the Department can confine a participant in the Intensive Sanctions program violates due process by not providing standards to govern the trial court's exercise of discretion; and he complains that the trial court prevented him from making a statement at the extension hearing. We address these contentions in their logical order.

A. *Standards*. Whether the Intensive Sanctions statute provides standards for the selection of a "maximum period for placements under s. 301.048(3)(a)1,"

[2] The agent also testified that Turner had pawned some rings. There was no evidence, however, that the rings were stolen. There is also no evidence in the record that the Department of Corrections placed Turner in confinement because of the rings.

173

§ 973.032(3)(b), STATS., or for the extension of that period, § 973.032(4)(b), does not implicate due process. *See State v. Borrell*, 167 Wis. 2d 749, 771, 482 N.W.2d 883, 891 (1992) (due process does not require "established and precise standards for imposition of a particular sentence"). Nevertheless, contrary to Turner's contention, the statute does provide guidance to the trial courts; the standards are embodied in the goals and structure of the Intensive Sanctions program. First, the Department is directed to construct the program to provide "punishment." Section 301.048(1)(a). Second, the Intensive Sanctions program is designed to accommodate "public safety considerations and the participant's needs for punishment and treatment." Section 301.048(1)(c). The Department may confine a participant in order to achieve these goals. Section 301.048(3)(a)1. Thus, in determining an "appropriate period for placements under s. 301.048(3)(a)1," § 973.032(3)(b), or an appropriate period for any extension of the Department's authority to make placements under § 301.048(3)(a)1, § 973.032(4)(b), the trial court must consider "public safety considerations and the participant's needs for punishment and treatment." Section 301.048(1)(c). A participant in the Intensive Sanctions program who does not comply with the program's rules—a participant who is out of control—is a threat to public safety. The availability of confinement sanctions is thus not only needed to protect the public from harm but also to encourage the Intensive Sanctions "prisoner" to participate in appropriate treatment. A trial court that considers these factors in a manner that is consistent with the facts of record acts within the ambit of its permissible discretion. *See Lievrouw v. Roth*, 157 Wis. 2d 332, 358-359, 459 N.W.2d 850, 859-860 (Ct. App.

1990) (A trial court's discretionary determination will be upheld on appeal if it is "consistent with the facts of record and established legal principles.").

B. *Trial court's exercise of discretion.* An extension of the Department's authorization to confine an Intensive Sanctions program "prisoner" is not punishment, which occurs only if and when the Department places the participant in confinement.[3] As the trial court explained, an extension is the legislative mechanism to give the Department sufficient leverage over the participant to ensure compliance with the program's rules. Thus, all that the Department of Corrections need show at an extension hearing is that the Intensive Sanctions participant has not made appropriate progress in the program, that the reservoir of potential confinement time is almost empty, and that the Department needs authorization for more time in order to carry out its statutory mandate. That was done here.

In granting the Department's request for the additional one-year authorization, the trial court found that the additional time was needed to deter Turner from violating the rules of the Intensive Sanctions program, and to spur his cooperation in the Department's efforts to treat him:

---

[3] Turner was punished for the possession of the pellet gun and the stolen property when he was placed in confinement for the nine months and ninety days prior to entry of the order from which this appeal is taken. He could have challenged that punishment if he believed that it was not warranted. *See* WIS. ADM. CODE § DOC 333.08(2) & § 301.048(3)(d), STATS. (judicial review of sanctions decisions is by certiorari). There is no evidence in the record that he did so.

[Turner]'s got an agent that seems to be cognizant of his responsibility and willing to work with [Turner] in this case, and it seems to me that the obligation is upon Mr. Turner to perform the conditions of Intensive Sanctions so he doesn't have that confinement time imposed.

. . . .

Mr. Turner, if you don't want to spend the time in confinement, then you have to cooperate with your agent and work along with him.

If Turner complies with the rules governing the Intensive Sanctions program, he will not be confined further—the key to avoiding further punishment is in his own hands.[4] The trial court's order was a valid and appropriate exercise of its discretion.[5]

---

[4] As explained in footnote 3, if the Department uses the additional one-year authorization to further confine Turner, he can challenge the Department's action.

[5] Turner also contends that there is no evidence in the record that he had "advance written notice of the claimed violation" for which the Department of Corrections sought the extension. There are three problems with this argument. First, as we discussed in Part II.B. of this opinion, an extension of the Department of Corrections's authority to confine an Intensive Sanctions prisoner is not punishment; punishment occurs when the Department places the prisoner in confinement. Second, Turner did not raise this issue before the trial court. Thus, the State had no reason to place evidence of notice in the record. This is ample reason for us not to consider this argument now. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–444, 287 N.W.2d 140, 145–146 (1980) (appellate courts do not ordinarily consider matters that are raised for the first time on appeal). Third, a copy of the motion seeking the extension that was filed by the Department is not in the appellate record. Thus, we cannot determine the nature and extent of the notice that was given to Turner. It is Turner's responsibility to ensure that the record permits an evaluation of his assertions of trial-court error. *See State Bank*

C.  *Turner's attempt to make an unsworn state-ment*. Turner wanted to make a statement to the trial court at the extension hearing. The trial court would not let him unless Turner agreed to make the state-ment under oath and subject to cross-examination. Turner's attorney told the trial court that "Mr. Turner is not going to testify." Turner claims, without support in the record, that the "waiver" was not valid, and con-tends that the State has the burden to demonstrate that it was. The law is settled, however, that Turner's silence at the time that his lawyer told the trial court that Turner would not testify is presumptive evidence of a valid waiver. *State v. Wilson*, 179 Wis. 2d 660, 672–673, 508 N.W.2d 44, 48–49 (Ct. App. 1993), *cert. denied*, 115 S. Ct. 100 (1994). Further, although Turner argues that he had a right to an allocution that was not under oath or subject to cross-examination, the right to allocution is purely statutory, *Hill v. United States*, 368 U.S. 424, 428 (1962) (no constitutional right to allocu-tion), and, in Wisconsin, applies only to sentencing, § 972.14(2), STATS. ("Before pronouncing sentence, the court shall ask the defendant why sentence should not be pronounced upon him or her and allow the district attorney, defense counsel and defendant an opportu-nity to make a statement with respect to any matter

*of Hartland v. Arndt*, 129 Wis. 2d 411, 423, 385 N.W.2d 219, 225 (Ct. App. 1986) (appellant's burden to ensure that record is sufficient to address issues raised on appeal); *see* RULE 809.15(1) (a)9, STATS. (The record on appeal shall include "[e]xhibits mate-rial to the appeal whether or not received in evidence."); RULE 809.15(2), STATS. (The parties receive ten-day notice of the pro-visional contents of the record prior to its transmittal to the appellate court.).

relevant to the sentence.").[6] Sentencing here took place when Turner was placed in the Intensive Sanctions program *in lieu* of prison. A decision following a hearing under § 973.032(4)(b), STATS., is not "pronouncing sentence"; § 972.14(2) does not, therefore, apply. We thus do not decide whether a trial court may require that the allocution mandated by § 972.14(2) be under oath and subject to cross-examination.

*By the Court.*—Order affirmed.

---

[6] Although *State v. Borrell*, 167 Wis. 2d 749, 772, 482 N.W.2d 883, 891 (1992), categorizes the right to allocution as a "due process" right, the United States Supreme Court, as we have seen, held to the contrary in *Hill v. United States*, 368 U.S. 424, 428 (1962) (no constitutional right to allocution). *Borrell*'s support for the statement that the "right to allocution" at sentencing is a "due process" right is given as: "*Bruneau v. State*, 77 Wis. 2d 166, 174–75, 252 N.W.2d 347 (1977)." *Borrell*, 167 Wis. 2d at 772, 482 N.W.2d at 891. The authority cited in *Bruneau* for this proposition is the following footnote: "By Federal Rules of Criminal Procedure Rule 32, the court must address defendant and ask if he has anything to say about mitigation of punishment. *United States v. Murphy*, 530 F.2d 1 (4th Cir. 1976); *Green v. United States*, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961)." *Bruneau*, 77 Wis. 2d at 175 n.2, 252 N.W.2d at 351 n.2. Neither *Green* nor *Murphy*, a *per curiam* decision, either holds or states that there is a constitutional right of allocution.