STATE of Wisconsin, Plaintiff-Respondent,

v.

Jamie M. GROSSE, Defendant-Appellant.†

Court of Appeals

*No. 96–2027–CR. Submitted on briefs February 10, 1997.—Decided April 10, 1997.*

(Also reported in 565 N.W.2d 174.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Mitchell E. Cooper*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Maureen McGlynn Flanagan*, assistant attorney general.

Before Dykman, P.J., Roggensack and Deininger, JJ.

DYKMAN, P.J.   Jamie M. Grosse appeals from a judgment convicting him of one count of escape for leaving the halfway house to which he was assigned as part of his intensive sanctions program. He also

appeals from an order denying his motion for postconviction relief. Grosse argues that his conviction for escape violated the Double Jeopardy Clause because the Division of Intensive Sanctions previously imposed upon him a six-month prison confinement for the same escape. We conclude that the Division of Intensive Sanctions' action was not punitive for double jeopardy purposes, and therefore Grosse was not subjected to double jeopardy when he was convicted of escape. Accordingly, we affirm.

## BACKGROUND

On June 23, 1994, Grosse received a three-year sentence to the Division of Intensive Sanctions (DIS) for his conviction of burglary, party to a crime. He was eventually placed at a halfway house in Beloit, Wisconsin.

On October 26, 1994, Grosse left the halfway house to visit his mother in Arizona. Ten days later he was apprehended. Grosse remained in jail in Arizona while contesting extradition to Wisconsin. When Grosse was returned to Wisconsin, DIS sanctioned him with a six-month confinement at Racine Correctional Institution for the escape, crediting him with the three months he served in Arizona. On May 2, 1995, he was released to a halfway house.

On August 24, 1995, the State charged Grosse with escape for leaving the halfway house on October 26, 1994. Grosse pleaded guilty and was sentenced to three years in prison, consecutive to the DIS sentence. Grosse moved for postconviction relief, arguing that the conviction was barred by the Double Jeopardy Clause. The trial court denied his motion. Grosse appeals.

## DISCUSSION

Grosse argues that his DIS sanction and subsequent criminal conviction for the same incident violated his double jeopardy rights. This is a question of law that we review *de novo*. *See State v. Thierfelder*, 174 Wis. 2d 213, 218, 495 N.W.2d 669, 672 (1993). There is generally a strong presumption in favor of the constitutionality of a statute. *State v. McMaster*, 206 Wis. 2d 30, 36, 556 N.W.2d 673, 676 (1996). In this case, Grosse bears the burden of establishing beyond a reasonable doubt that his administrative sanction and subsequent conviction for escape violates the Double Jeopardy Clause. *See id.*

The Double Jeopardy Clause includes three distinct constitutional guarantees: (1) protection against a second prosecution for the same offense after an acquittal; (2) protection against a second prosecution for the same offense after a conviction; and (3) protection against multiple punishments for the same offense. *State v. Kurzawa*, 180 Wis. 2d 502, 515, 509 N.W.2d 712, 717 (1994). Grosse contends that his DIS confinement and subsequent conviction for escape subjected him to multiple punishments for the same offense.

The State and Grosse agree that his conviction and sentencing for escape were punitive. They disagree, however, as to whether the DIS sanction constitutes a second punishment for double jeopardy purposes. To determine whether the DIS sanction constitutes punishment, we apply a "principal purpose" test. "Governmental action is punishment under the double jeopardy clause if its principal purpose is punishment,

retribution or deterrence." *State v. Killebrew*, 115 Wis. 2d 243, 251, 340 N.W.2d 470, 475 (1983).

Our courts have examined administrative sanctions in several similar contexts and have concluded that the sanctions did not constitute punishment for double jeopardy purposes. For example, in *State ex rel. Flowers v. DHSS,* 81 Wis. 2d 376, 260 N.W.2d 727 (1978), the court concluded that parole revocation was not punishment because parole revocation hearings are concerned not with retribution, but whether the parolee's rehabilitation "can be successfully achieved outside prison walls or will be furthered by returning him to a closed society." *Id.* at 385, 260 N.W.2d at 732. And in *Killebrew,* the court concluded that prison disciplinary action was not punishment for double jeopardy purposes because the primary purpose of the disciplinary action was to assist inmates "in adjusting their conduct in order to maintain a safe and humane environment in the prison." *Killebrew,* 115 Wis. 2d at 254, 340 N.W.2d at 476. *See also State v. Fonder,* 162 Wis. 2d 591, 469 N.W.2d 922 (Ct. App. 1991) (prison disciplinary action); *State v. Quiroz,* 149 Wis. 2d 691, 439 N.W.2d 621 (Ct. App. 1989) (extension of prisoner's mandatory release date); *State ex rel. Bieser v. Percy,* 97 Wis. 2d 702, 295 N.W.2d 179 (Ct. App. 1980) (forfeiture of "good time" as a consequence of parole revocation). Grosse argues, however, that the purpose of the DIS sanction was different than the purpose of the sanctions pursued in these other cases.

The legislature created the Division of Intensive Sanctions in 1991 and instructed the department of corrections (DOC) to design and administer the intensive sanctions program. *See* 1991 Wis. Act 39, § 3128hv. The legislature created DIS to provide: "(a)

Punishment that is less costly than ordinary imprisonment and more restrictive than ordinary probation or parole supervision"; "(b) Component phases that are intensive and highly structured"; and "(c) A series of component phases for each participant that is based on public safety considerations and the participant's needs for punishment and treatment." Section 301.048(1), STATS. Each component phase consists of one or more sanctions,[1] and the DOC may provide more than one sanction at a time or return to a sanction previously used for the participant. Section 301.048(3)(b).

The rules for the administration of the intensive sanctions program are contained in Chapter DOC 333 of the Wisconsin Administrative Code. Section DOC 333.08 provides the rules for DIS participant discipline. This section provides that any participant who leaves the area to which he or she is assigned has committed a "major offense." Section DOC 333.08(5). A "major penalty" may be imposed if the accused inmate is found guilty of a "major offense." Section DOC 333.08(3). "Major penalty" includes placement in a Type 1 prison or jail. Section DOC 333.03(7). We

---

[1] Section 301.048(3)(a), STATS., provides:

(3) COMPONENT PHASES. (a) The department shall provide each participant with one or more of the following sanctions:

1. Placement in a Type 1 prison or a jail, county reforestation camp, residential treatment facility or community-based residential facility. The department may not place a participant under this paragraph for more than one year or, if applicable, the period specified by the court under s. 973.032(3)(b), whichever is shorter, except as provided in s. 973.032(4).

2. Intensive or other field supervision.

3. Electronic monitoring.

4. Community service.

5. Restitution.

6. Other programs as prescribed by the department.

assume that the DOC sanctioned Grosse with the six-month confinement for escape pursuant to this section. ■

After reviewing the purpose of the DIS program as provided in § 301.048(1), STATS., and WIS. ADM. CODE § DOC 333.01, we conclude that punishment was not the primary purpose of Grosse's six-month prison confinement. Placement in a Type 1 prison is one of the component phases of the intensive sanctions program. Section 301.048(3)(a). The component phases through which a DIS participant passes are "based on public safety considerations and the participant's needs for punishment and treatment." Section 301.048(1)(c). Therefore, in addition to punishment, DIS sanctions are aimed at two remedial purposes: public safety and the participant's needs for treatment. Although this does not establish that Grosse's prison confinement was not primarily punitive, our review of the administrative rules leads us to conclude that Grosse's DIS sanction was intended to fulfill these remedial purposes.

WISCONSIN ADM. CODE § DOC 333.01 enumerates five purposes of the intensive sanctions program. Two of these purposes—to provide necessary treatment and services and to increase communication among victims, victim services agencies and legal professionals—are not germane to our discussion. Of the other three purposes, only one is to provide punishment. Section DOC 333.01(1) states that one purpose of the intensive sanctions program is to "[p]rovide a cost-effective sentencing and placement option which satisfies punishment and public safety issues for offenders who would otherwise be incarcerated." This section does not imply, however, that punishment is the primary purpose of *disciplinary*

*sanctions*. Rather, it states that a purpose of DIS is to provide satisfactory punishment as a *sentencing and placement option*. When sentencing a felon to DIS instead of prison, a court needs to consider whether the intensive sanctions program satisfies the punishment and public safety issues for that particular felon.

WISCONSIN ADM. CODE § DOC 333.01(2) addresses the purpose of DIS sanctions. It provides that a purpose of the intensive sanctions program is to "[p]rovide public safety through the administration of sanctions and supervision standards appropriate to the needs and requirements of the offender." Grosse's disciplinary sanction was consistent with this purpose. Grosse, a convicted felon, escaped from custody and left the state. It is consistent with the promotion of public safety to imprison a felon who has exhibited the will to escape from less secure placements.

WISCONSIN ADM. CODE § DOC 333.01(4) also supports the notion that DIS disciplinary sanctions are remedial in purpose. This section provides that a purpose of the intensive sanctions program is to "[p]romote a crime-free lifestyle by requiring offenders to be employed, perform community service, make restitution and remain drug free." Section 333.08 promotes a crime-free lifestyle because it provides that DIS participants who violate their conditions of placement, the rules of any program to which they are assigned, or state or federal law are subject to disciplinary sanctions.

Grosse offers several arguments in support of his contention that his six-month confinement was primarily intended as punishment. First, he cites *State v. Turner,* 200 Wis. 2d 168, 546 N.W.2d 880 (Ct. App. 1996), which states that punishment occurs "when the [DOC] places [a DIS] participant in confinement." *Id.*

at 175, 546 N.W.2d at 883. Second, he argues that the language in WIS. ADM. CODE § DOC 333.08 referring to "offenses," "sanctions," "discipline," and "penalties" is strikingly punitive in nature. Third, he attempts to distinguish *Killebrew* on the grounds that the prison administrative sanction there led only to a change in the conditions of Killebrew's confinement, while his disciplinary sanction "took him from relative liberty at a halfway house to absolute confinement in jail and prison."

We reject Grosse's argument for three reasons. First, considering the remedial purposes of DIS sanctions set forth in § 301.048(1), STATS., and WIS. ADM. CODE § DOC 333.01, we do not believe that Grosse overcomes his burden to establish beyond a reasonable doubt the unconstitutionality of his DIS confinement and subsequent criminal conviction for escape. *See McMaster*, 206 Wis. 2d at 36, 556 N.W.2d at 676. Grosse's argument also fails to recognize that a sanction does not need to be solely remedial in purpose to fall outside the ambit of the Double Jeopardy Clause. "When the principal purpose is nonpunitive, the fact that a punitive motive may also be present does not make the action punishment." *Killebrew,* 115 Wis. 2d at 251, 340 N.W.2d at 475.

Third and most importantly, any punishment that Grosse received as part of his DIS sanction was attributable to the conviction for which he was originally sentenced to DIS, not to the escape itself. Although Grosse is correct in concluding that the liberty he lost was greater than the liberty lost in *Killebrew*, he does not distinguish his administrative placement in prison from the parole revocation in *Flowers*. In both cases, the felon was moved from a place of relative liberty to a place of absolute

confinement. Yet in *Flowers*, the court did not equate this loss of liberty with the loss of liberty incurred upon being convicted of a crime:

> [W]e believe there is a considerable distinction between the liberty of a parolee and that of one who stands accused of a crime without a prior conviction. Legally, the parolee is in the constructive custody of the Department, subject to the forfeiture of his liberty for violation of the conditions of his parole. Therefore, revocation deprives him ". . . not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."

*Flowers,* 81 Wis. 2d at 386, 260 N.W.2d at 733 (citations omitted).

Considering the difference between parole revocation and a criminal conviction, the *Flowers* court concluded:

> The individual rights and the public purposes at stake in parole revocation are therefore distinct from those ordinarily associated with criminal punishment. The element of punishment in parole revocation is attributable to the crime for which the parolee was originally convicted and sentenced.
>
> The sentence he is required to serve upon revocation is the punishment for the crime of which he has previously been convicted. The revocation hearing is concerned primarily with the manner of serving the sentence previously imposed. Revocation is thus a continuing consequence of the original conviction from which parole was granted.

*Id.* (citations omitted).

Likewise, the liberty that Grosse enjoyed by being placed at a halfway house was conditional upon his

compliance with the rules of his intensive sanctions program. When Grosse absconded from the halfway house, he violated both the rules of the intensive sanctions program and state law regarding escape. This violation allowed the DOC to change the manner in which Grosse served his DIS sentence. But any punishment incurred by the change in placement from the halfway house to prison was attributable to Grosse's original conviction for burglary, not to Grosse's escape from the halfway house. Therefore, Grosse was not punished twice for the same offense.

Finally, Grosse urges us to conclude that § 301.048, STATS., requires the State to choose either an administrative sanction or a criminal prosecution for escape, but not both. But § 301.048(3)(b) specifically provides that the DOC may provide sanctions in any order and may return a DIS participant to a sanction already used, and § 301.048(5) provides that "[a]ny intentional failure of a participant to remain within the extended limits of his or her placement or confinement . . . is considered an escape under s. 946.42(3)(a)." The administrative sanction and subsequent criminal conviction of Grosse was authorized by statute, and we reject Grosse's argument.

*By the Court.*—Judgment and order affirmed.