STATE of Wisconsin, Plaintiff-Appellant,

v.

Thomas A. GREVE, Defendant-Respondent.

Supreme Court

*No. 02–2332–CR. Oral argument November 5, 2003.—Decided June 10, 2004.*

2004 WI 69

(Also reported in 681 N.W.2d 479.)

CROOKS, J., concurs.

PROSSER, J., dissents.

ABRAHAMSON, C.J. and BRADLEY, J., join.

For the plaintiff-appellant the cause was argued by *Shunette T. Campbell,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-respondent there was a brief by *Jeffrey J. De La Rosa* and *Seymour, Kremer, Nommensen, Morrissy & Koch, L.L.P.,* Elkhorn, and oral argument by *Jeffrey De La Rosa.*

¶ 1. PATIENCE D. ROGGENSACK, J. This case is before us on certification from the court of appeals. The three certified questions arise from an interlocutory appeal filed by the State pursuant to Wis. Stat.

§ 974.05(1)(d)2 and 3 (2001–02),[1] due to an order of the Walworth County Circuit Court, Michael S. Gibbs presiding, denying the State's motion to admit portions of defendant Thomas A. Greve's sentencing memorandum[2] into evidence at trial. The certified questions are:

(1) Whether *State v. Crowell,* 149 Wis. 2d 859, 440 N.W.2d 352 (1989), construing Wis. Stat. § 972.15 as limiting the use of a court-ordered presentence investigation report (PSI) to postconviction settings, also applies to a defendant's sentencing memorandum.

(2) Whether a defendant's constitutional right to due process is violated when his sentencing memorandum is used in a subsequent criminal trial.

(3) Whether a defendant's sentencing memorandum should be kept confidential, as a matter of public policy.

¶ 2. The majority opinion concludes that neither Wis. Stat. § 972.15 nor our decision in *Crowell* applies to a defendant's sentencing memorandum. A plurality of the court concludes that a defendant's constitutional right to due process will not be violated by use of his or her sentencing memorandum in a subsequent criminal trial;[3] and the majority concludes that public policy

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] A defendant's sentencing memorandum has many names (e.g., defense presentencing report, defense presentence investigation report, defense PSI). Marcia G. Shein, *Sentencing Defense Manual: Advocacy/Practice/Procedure,* § 4.1, 4–2 (West Group 1998). We will refer to any such document as a "sentencing memorandum."

[3] Justice N. Patrick Crooks, who writes in concurrence, would not decide whether there is a constitutional right of

considerations do not support extending a confidentiality requirement to a defendant's sentencing memorandum.

## I. BACKGROUND

¶ 3. The State, by amended information, charged Thomas A. Greve with two counts of first-degree sexual assault of a child as a persistent repeater.[4] Greve later pled guilty to a single charge of first-degree sexual assault of a child, but without the persistent repeater enhancement. In preparation for sentencing, Greve filed a sentencing memorandum, prepared by a clinical social worker, in which he is quoted as making incriminating statements about the crime of which he was convicted.

¶ 4. The circuit court imposed a 40–year sentence, consisting of a 25–year term of confinement followed by a 15–year period of extended supervision. However, the court of appeals reversed Greve's conviction, based on

allocution under either the state or federal constitution. The dissent, written by Justice David T. Prosser and joined by Chief Justice Shirley S. Abrahamson and Justice Ann Walsh Bradley, does not decide that constitutional question either. Accordingly, this portion of the opinion, ¶¶ 25–34, is a plurality decision, and the concurrence and the dissent refer to it as the "lead opinion."

[4] The amended information alleged that Greve violated Wis. Stat. § 948.02(1), which statute criminalizes as a felony sexual contact or sexual intercourse with a person who has not yet attained 13 years of age. In addition, the State alleged that Greve was a persistent repeater, having been convicted on November 10, 1982, of indecent liberties with a child in an Illinois case. *See* Wis. Stat. § 939.62(2m) (defining a persistent repeater).

improper involvement of a substituted judge in the circuit court proceeding, and remanded the case for further proceedings.

¶ 5. On remand, the State filed a motion in limine, requesting to use the incriminating portions of Greve's sentencing memorandum at a subsequent trial. The circuit court denied the motion, concluding that Wis. Stat. § 972.15 and *Crowell* prohibit use of Greve's sentencing memorandum at a subsequent trial. The State appealed, and the court of appeals certified the three questions set out above.[5] We accepted certification.

## II. DISCUSSION

A. Standard of Review

¶ 6. This case requires us to interpret Wis. Stat. § 972.15. The interpretation of a statute is a question of law that we review de novo. *State v. T.J. Int'l, Inc.,* 2001 WI 76, ¶ 20, 244 Wis. 2d 481, 628 N.W.2d 774; *State ex. rel. Angela M.W. v. Kruzicki,* 209 Wis. 2d 112, 121, 561 N.W.2d 729 (1997); *Stockbridge Sch. Dist. v. Department of Pub. Instruction Sch. Dist. Boundary Appeal Bd.,* 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996).

¶ 7. We are also required to apply constitutional principles to a set of facts. That too presents a question of law that we review de novo. *State v. A.S.,* 2001 WI 48, ¶ 19, 243 Wis. 2d 173, 626 N.W.2d 712; *State v. Pallone,* 2000 WI 77, ¶¶ 26–27, 236 Wis. 2d 162, 613 N.W.2d 568; *State v. Martwick,* 2000 WI 5, ¶ 17, 231 Wis. 2d 801, 604 N.W.2d 552.

---

[5] The trial, therefore, has not been rescheduled pending our decisions on the certified questions.

## B. Sentencing Background

¶ 8. In order to explain our answers to the questions presented, we first review relevant general principles. At sentencing, the circuit court has a dual responsibility: to the person it is about to sentence and to the public that the criminal laws protect. *State v. Heffran,* 129 Wis. 2d 156, 163, 384 N.W.2d 351 (1986); *Neely v. State,* 47 Wis. 2d 330, 334, 177 N.W.2d 79 (1970); *State v. Perez,* 170 Wis. 2d 130, 140, 487 N.W.2d 630 (Ct. App. 1992); *State v. Knapp,* 111 Wis. 2d 380, 384–85, 330 N.W.2d 242 (Ct. App. 1983). In order to meet its responsibility, the circuit court accepts information about the defendant, his or her personality, social circumstances and general patterns of behavior to aid it in rendering "an intelligent and informed judgment regarding the appropriate penalty under the circumstances." *Heffran,* 129 Wis. 2d at 163–64; *see also Knapp,* 111 Wis. 2d at 385 (noting that "[h]ighly relevant, if not essential, to [the court's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics"); *Rosado v. State,* 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975) (stating that "[i]t is well settled that all information relevant to sentencing should be brought to the attention of the trial judge"). Moreover, "the entire sentencing process is to be a search for the truth and an evaluation of alternatives." *Farrar v. State,* 52 Wis. 2d 651, 657, 191 N.W.2d 214 (1971); *see also State v. McQuay,* 154 Wis. 2d 116, 130, 452 N.W.2d 377 (1990).

¶ 9. A PSI is one "means through which the sentencing court receives information" about a defendant, *Heffran,* 129 Wis. 2d at 163–64, and it is "intended to assist the sentencing court in determining the kind and extent of punishment to be imposed in the particular case." *Id.* at 163 (citation omitted). *See also* Wis. Admin. Code § DOC 328.27 (Mar., 2004) (stating the "primary purpose of the presentence investigation report is to provide the sentencing court with accurate and relevant information upon which to base its sentencing decision"); *Crowell,* 149 Wis. 2d at 868 (explaining that a PSI is prepared to provide the sentencing court with "a reliable information base" in order to assist it in reaching "rational and consistent sentencing").

¶ 10. Wisconsin Stat. § 972.15 provides that, after a felony conviction, the court "may" order a presentence investigation prepared by the department of corrections. Section 972.15(1). However, a PSI is not required prior to sentencing. *Bruneau v. State,* 77 Wis. 2d 166, 174, 252 N.W.2d 347 (1977) (stating that a PSI is not constitutionally or statutorily required) (citing *Weatherall v. State,* 73 Wis. 2d 22, 242 N.W.2d 220 (1976) and *Sprang v. State,* 63 Wis. 2d 679, 218 N.W.2d 304 (1974)). The recommendations in a PSI are not binding on the court. *McQuay,* 154 Wis. 2d at 131. PSIs, ordered pursuant to § 972.15(1), are prepared by department of corrections staff. Wis. Admin. Code § DOC 328.27(2). The staff member acts on behalf of an independent judiciary, and does not act as an agent of the State. *McQuay,* 154 Wis. 2d at 133. In order to be reliable, the PSI must be prepared by one who is neutral and

independent of both the prosecution and the defense. *Perez,* 170 Wis. 2d at 140–41.

¶ 11. All court-ordered PSIs contain the same categories of information. Wis. Admin. Code § DOC 328.27. They are required to review the defendant's present offense, prior criminal record, prior correctional institution record, victim's statement, family information and personal history. *Id.* at (3)(a). A PSI "shall contain information about the offender's present situation," including any pending charges. *Id.* at (3)(b). It "shall . . . include[]" the writer's recommendation for sentencing and the reasoning supportive of that recommendation, unless the court has otherwise stated, *id.* at (3)(c), and a tentative corrections plan, unless waived by the staff member's supervisor. *Id.* at (3)(d). The defendant has a right to challenge any statement in the PSI that he or she believes is inaccurate or incomplete. *State v. Watson,* 227 Wis. 2d 167, 194, 595 N.W.2d 403 (1999).

¶ 12. In recent years, some defense counsel have submitted sentencing memoranda prior to sentencing. Those memoranda are similar in content to court-ordered PSIs. Marcia G. Shein, *Sentencing Defense Manual: Advocacy/Practice/Procedure,* § 4.2, 4–7 (West Group 1998). However, a defendant's sentencing memoranda has no prescribed format or requisite inclusions, and it is prepared by a person advocating on behalf of the defendant. *See* John L. Carroll, *The Defense Lawyer's Role in the Sentencing Process: You've Got to Accentuate the Positive and Eliminate the Negative,* 37 Mercer L. Rev. 981, 1000–01 (1986) [hereinafter *The Defense Lawyer's Role in the Sentencing Process*].

## C. Greve's and the State's Positions

¶ 13. Greve contends that the contents of his sentencing memorandum cannot be used in a subsequent trial. In order to prevail, he must establish either a statutory or a constitutional right that precludes the use of his statements. Greve raises both theories. He contends that Wis. Stat. § 972.15 is the statutory basis because in *Crowell* we concluded that a PSI prepared under § 972.15 could not be used in a trial subsequent to Crowell's plea withdrawal. Greve argues that because we concluded in *Crowell* that § 972.15 prevents the subsequent use of a court-ordered PSI, and a defendant's sentencing memorandum serves the same purpose as a court-ordered PSI, § 972.15 protects his sentencing memorandum too. The State argues that both the statute and *Crowell* apply only to court-ordered PSIs.

¶ 14. To support his constitutional argument, Greve contends that at sentencing, a defendant has a due process right: (1) to be sentenced on the basis of true and correct information; and (2) to allocution. He cites *State v. Borrell,* 167 Wis. 2d 749, 772, 482 N.W.2d 883 (1992); *Bruneau,* 77 Wis. 2d at 174–75; and *Perez,* 170 Wis. 2d at 138. He contends that neither constitutional right can be fully exercised by a defendant if the statements that are made to whomever prepares his sentencing memorandum are not suppressed. The State does not parse whether Greve has a due process right to allocution, but it agrees that Greve does have a due process right to be sentenced on the basis of accurate information. However, it contends that any constitutional right Greve has is not affected by subsequent use of his sentencing memorandum, which the State characterizes as an advocacy document.

456

D. Wisconsin Stat. § 972.15

¶ 15. In order to decide whether Wis. Stat. § 972.15 and *Crowell* provide support for Greve's position, we begin with an examination of the provisions of § 972.15. Section 972.15 provides in relevant part:

(1) After a conviction the court may order a presentence investigation, except that the court may order an employee of the department [of corrections] to conduct a presentence investigation only after a conviction for a felony.

(2) When a presentence investigation report has been received the judge shall disclose the contents of the report to the defendant's attorney and to the district attorney prior to sentencing. When the defendant is not represented by an attorney, the contents shall be disclosed to the defendant.

. . .

(3) The judge may conceal the identity of any person who provided information in the presentence investigation report.

(4) After sentencing, unless otherwise authorized under sub. (5) or ordered by the court, the presentence investigation report shall be confidential and shall not be made available to any person except upon specific authorization of the court.

(5) The department may use the presentence investigation report for correctional programming, parole consideration or care and treatment of any person sentenced . . . .

¶ 16. We turn our attention to the PSI described in Wis. Stat. § 972.15 to determine whether that de-

457

scription includes all sentencing memoranda or only those that are court-ordered. We note that the "purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. The meaning of the words chosen by the legislature is the initial focus of statutory interpretation. As we have explained, "We assume that the legislature's intent is expressed in the statutory language." *Id.,* ¶ 44. We begin by giving that language its plain and ordinary meaning. *Id.,* ¶ 45. We are aided in ascertaining the meaning by the statutory context in which words are placed. *Id.,* ¶ 46. If the statute's meaning is clear on its face, we need go no further; we simply apply it. *Id.,* ¶ 45. For the reasons set forth below, we conclude that § 972.15 applies only to court-ordered PSIs.

¶ 17. The confidentiality afforded to court-ordered PSIs under Wis. Stat. § 972.15 that Greve seeks for his sentencing memorandum is contained within subsection (4). It provides that "the presentence investigation report shall be confidential . . . ." In order to construe how inclusive the legislature meant this subsection to be, we examine the statutory context in which "presentence investigation" is used. *Kalal,* 271 Wis. 2d 633, ¶ 45.

¶ 18. Wisconsin Stat. § 972.15(1) begins by suggesting that if sentencing for a felony conviction is to occur, "the court may order a presentence investigation" to be completed by the department of corrections. However, the court is not required to do so. Therefore, the creation of the PSI referenced in subsection (1) is within the control of the court, not the State or the defendant. Furthermore, the PSI of subsection (1)

458

cannot include a defendant's sentencing memorandum because a defendant would have no authority to "order" the department of corrections to make such a report.

¶ 19. Additionally, subsection (2) of Wis. Stat. § 972.15 does not give a defendant the independent right to be provided with the PSI unless he or she is unrepresented by counsel, and it also requires the court to disclose the PSI to defendant's counsel. Therefore, this subsection could not refer to a defendant's sentencing memorandum, as that document would already be available to defendant and his or her counsel.

¶ 20. Wisconsin Stat. § 972.15(3) permits the judge to conceal the identity of those who provide information for the report. Therefore, once again, this subsection could not include a defendant's sentencing memorandum as the defendant would know who had provided information. And finally, subsection (5) permits the department of corrections to use the PSI for correctional programming and other functions of the department, as an exception to the confidentiality requirements of subsection (4). We conclude that the legislature would not have intended that the department of corrections use a sentencing memorandum to carry out its functions when it had no basis for knowing whether the information it contained was true and correct. Rather, we conclude the legislature referred only to a court-ordered PSI in subsection (5). Therefore, in order to arrive at the conclusion Greve asks that we reach, we would have to conclude that subsection (4) refers to documents in addition to those described in the other subsections of § 972.15. However, nothing in the plain wording of subsection (4) or of any other subsection of § 972.15 indicates that is what the legislature intended. Accordingly, we conclude that the plain

language of § 972.15 refers only to court-ordered PSIs and does not refer to a defendant's sentencing memorandum.

¶ 21. Greve also argues that even if the legislature did not intend that privately prepared sentencing memoranda should be included with the PSIs described in Wis. Stat. § 972.15, our decision in *Crowell* should be extended to defendants' sentencing memoranda because they serve the same purpose as court-ordered PSIs. Greve argues that *Crowell* is broadly written, and therefore is elastic enough to be expanded to apply its concepts to a defendant's sentencing memorandum. We conclude that *Crowell* is a statutory interpretation case and cannot be expanded to a defendant's sentencing memorandum not described in the statute.

¶ 22. Crowell pled guilty to first-degree sexual assault. A second count was dismissed and read in for sentencing purposes. The court accepted Crowell's guilty plea and ordered a presentence investigation. *Crowell*, 149 Wis. 2d at 862. At the sentencing hearing, the court read a letter from the victim's father in which the father demanded that Crowell be tested for AIDS and that the family be notified of the results of that test. *Id.* The court, over Crowell's objection, ordered a blood test. *Id.* Crowell then moved to withdraw his guilty plea, and the court granted that motion. *Id.* At the subsequent trial, the State introduced testimony from the probation and parole officer who met with Crowell following his initial conviction as part of her preparation of a presentence investigation report. The officer testified what Crowell had told her about the sexual assault. *Id.* at 862–63. Crowell was convicted of two counts of first-degree sexual assault. *Id.* at 862. He appealed his conviction, arguing that Wis. Stat. § 972.15 prohibited the State's use of the probation and

parole officer's testimony at trial. *Id.* at 866. Our interpretation of § 972.15 caused us to agree with Crowell. We explained:

> When we look to the purpose of a presentence investigation report, however, it becomes clear that the legislature did not intend that the information collected for the report or the report itself be used at trial if the defendant withdraws the guilty plea.

*Id.* at 868.

¶ 23. One of the reasons we concluded that the legislature intended to preclude a later use of the PSI was to ensure the continued cooperation of defendants in the presentence investigation process. *Id.* at 869. "The quality and accuracy of the presentence investigation report, [and therefore its helpfulness to the court], depend in large measure on the cooperation of the defendant." *Id.* A defendant who communicates openly with the department of corrections staff member responsible for the investigation and report will provide more information and more honest information. If a defendant realizes that what he or she says during the presentence investigation will be used against him or her in some way later, the defendant will be reticent to be open and forthcoming. *Id.*

¶ 24. A second reason we concluded that the legislature intended the PSI not be used in establishing guilt involved the timing of the PSI. A presentence investigation cannot be ordered, and the report is not prepared or disclosed, until after conviction. *See* Wis. Stat. § 972.15(1). By limiting the investigation and report to postconviction proceedings, we avoid prejudicing the fact finder. *Id.* at 870 (citing *Rosado,* 70 Wis. 2d

at 286); *see also Gregg v. United States*, 394 U.S. 489 (1969) (addressing Fed. R. Crim. P. 32, a counterpart to Wis. Stat. § 972.15).

¶ 25. Because neither Wis. Stat. § 972.15 nor *Crowell* apply to a defendant's sentencing memorandum, we answer the first certified question in the negative.

E. Constitutional Issues

¶ 26. The second certified question requires us to examine whether a defendant's constitutional right to due process is violated when the State introduces inculpatory statements made during the preparation of a sentencing memorandum, at a subsequent trial. Greve's due process arguments are two-fold: (1) that he has a constitutional right to be sentenced on true and correct information and his sentencing memorandum is necessary in order to afford him that right; and (2) that he has a constitutional right to allocution that he has exercised through the filing of a sentencing memorandum, which constitutional right will be chilled if his statements can be used in a subsequent trial.

¶ 27. A defendant has a due process right to be sentenced on true and correct information. *See Borrell*, 167 Wis. 2d at 772; *Bruneau*, 77 Wis. 2d at 174–75; *Perez*, 170 Wis. 2d at 138. The court-ordered PSI is the cornerstone of that information. *See The Defense Lawyer's Role in the Sentencing Process, supra*, at 988 (explaining that the presentence investigation report is a "primary source of information" about the defendant and his or her background). A defendant has the right to be present at sentencing and to object to incorrect or incomplete information contained within the PSI. *Watson*, 227 Wis. 2d at 193–94.

¶ 28. Greve does not explain why the addition of his sentencing memorandum will cause the court to more easily recognize any inaccuracy in the PSI than his defense counsel's questioning at sentencing could achieve. He seems to contend that the court will have more complete information through the use of his sentencing memorandum; therefore, that memorandum should receive the same protected status as a court-ordered PSI. However, if a defendant's sentencing memorandum were to achieve the same status as a court-ordered PSI, a defendant may be less likely to be forthcoming with a department of corrections staff member over whom he or she has no control. This could cause the sentencing court to have more limited information available to it in the PSI. Therefore, the court may be forced to rely on a defense advocacy document for sentencing. While such a shift in court reliance may serve a defendant's purposes, the sentencing court must serve the public interest as well. Accordingly, we conclude that confidentiality for statements a defendant makes in the course of the preparation of his or her sentencing memorandum is not necessary to assure that a defendant will be sentenced based on accurate information.

¶ 29. Greve also contends that introduction at a subsequent trial of inculpatory statements he is quoted as making in his sentencing memorandum violates his due process right of allocution. He does not identify whether this is a federal constitutional right or a state constitutional right. However, he relies on our opinions in *Borrell,* where we said, "A defendant has three due process rights at sentencing: (1) to be present at the hearing and to be afforded the right to allocution . . . ,"

463

*Borrell,* 167 Wis. 2d at 772, and in *Bruneau,* where we said, "The federal cases indicate that a defendant's due-process rights at a sentencing hearing are three in number: (1) To be present at the hearing and to be afforded the right of allocution . . . ." *Bruneau,* 77 Wis. 2d at 174.

¶ 30. In *Bruneau,* we based our assertion of a constitutional due process right of allocution on federal law, and we cited *United States v. Murphy,* 530 F.2d 1 (4th Cir. 1976) and *Green v. United States,* 365 U.S. 301 (1961) to support our conclusion. *Bruneau,* 77 Wis. 2d at 174 n.2.[6] However, the conclusion we drew from *Murphy* and *Green* was erroneous. Neither case mentions a due process right of allocution that arises under the United States Constitution. Both cases focus solely on the federal statutory right found in Fed. R. Crim. P. 32. Additionally, the United States Supreme Court decided in *Hill v. United States,* 368 U.S. 424 (1962), that the failure to accord a defendant a right of allocution before imposing sentence "is neither jurisdictional nor constitutional." *Id.* at 428.

¶ 31. *Borrell* relied on *Bruneau* for its assertion that at sentencing a defendant has a due process right of allocution. *Borrell,* 167 Wis. 2d at 772. Therefore, *Borrell* was referring to the same nonexistent federal due process right we cited in *Bruneau.* Even though those statements were dicta in both *Borrell* and *Bruneau,* they have caused confusion in other Wisconsin courts. *See State v. Lindsey,* 203 Wis. 2d 423, 447, 554 N.W.2d 215 (Ct. App. 1996) (explaining the confusion caused by the dicta in *Bruneau*); *State v. Turner,* 200 Wis. 2d 168, 177, 546 N.W.2d 880 (Ct. App. 1996)

---

[6] We also cited Fed. R. Crim. P. 32 as the source of the federal statutory right of allocution.

(concluding that the right of allocution is purely statutory in Wisconsin and it is contained in Wis. Stat. § 972.14(2)). Therefore, given the clear statement by the United States Supreme Court in *Hill,* we clarify our opinions in both *Borrell* and *Bruneau,* and all cases[7] that relied on them for a federal constitutional right of allocution, by withdrawing the language that implies there is a due process right of allocution under the federal constitution, in all circumstances.[8]

---

[7] *See State v. Petrone,* 161 Wis. 2d 530, 562 n.24, 468 N.W.2d 676 (1991) (citing *Bruneau v. State,* 77 Wis. 2d 166, 174–75, 252 N.W.2d 347 (1977), in dicta, as authority for a due process right of allocution at sentencing); *State v. Varnell,* 153 Wis. 2d 334, 340, 450 N.W.2d 524 (Ct. App. 1989) (citing *Bruneau* and *Currie v. Schwalbach,* 139 Wis. 2d 544, 565, 407 N.W.2d 862 (1987) (a summary contempt case) as authority for a due process right of allocution); *State v. Peters,* 2000 WI App 154, ¶ 13 n.13, 237 Wis. 2d 741, 615 N.W.2d 655, *reversed on other grounds,* 2001 WI 74, 244 Wis. 2d 470, 628 N.W.2d 797 (citing *Varnell* as authority for a federal due process right of allocution); *State v. Koopmans,* 202 Wis. 2d 385, 397, 550 N.W.2d 715 (Ct. App. 1996) (citing *Varnell* when it refers to a due process right to allocution at sentencing). There are also numerous unpublished cases using the same chain of authority for a due process right of allocution assertedly protected by the United States Constitution.

[8] A few federal courts have identified a due process right of allocution when a defendant requests it; state law does not provide for it and the court denies the defendant's request. *See, e.g., Boardman v. Estelle,* 957 F.2d 1523 (9th Cir. 1992). However, decisions of federal courts other than the Supreme Court do not bind this court when interpreting federal law. *McKnight v. General Motors Corp.,* 157 Wis. 2d 250, 256–57, 458 N.W.2d 841 (Ct. App. 1990) (citing *State v. Webster,* 114 Wis. 2d 418, 426 n.4, 338 N.W.2d 474 (1983)).

The dissent aptly points out that the defendant in *Hill v. United States,* 368 U.S. 424 (1962), had not affirmatively

465

¶ 32. We note that there is a line of cases bottomed in contempt proceedings where we discuss a right to speak in explanation or in mitigation of the act for which contempt was sought. *See, e.g., Oliveto v. Circuit Court for Crawford County,* 194 Wis. 2d 418, 433–34, 533 N.W.2d 819 (1995); *Currie v. Schwalbach,* 139 Wis. 2d 544, 557–68, 407 N.W.2d 862 (1987). These cases are grounded in federal law and focus on what amount, if any, of procedural process is due in a summary contempt proceeding. *Currie,* 139 Wis. 2d at 565. As we explained in *Oliveto,* while relying on *Currie:*

> [T]he allocution requirement essentially provides a check on the heightened potential for abuse posed by the summary contempt power by providing an opportunity for the contemnor to apologize or to defend or explain the contumacious behavior.

*Oliveto,* 194 Wis. 2d at 436 (citing *Currie,*[9] 139 Wis. 2d at 565).

¶ 33. In *Currie,* we relied heavily on the reasoning in *Groppi v. Leslie,* 404 U.S. 496 (1972), for our conclusion that summary contempt usually requires a meaningful opportunity to be heard at some point in the proceedings. *Currie,* 139 Wis. 2d at 560. In *Groppi,* the United States Supreme Court reviewed Groppi's conviction for legislative contempt and concluded that he had

---

requested allocution and been denied it. Therefore, Hill could be read as reserving a decision under those facts for another day. Dissent, ¶ 68. That position may have merit. However, because Greve was asked by the sentencing court if he wished to speak and he personally exercised that right in open court before sentence was imposed, this case does not raise the issue that the dissent suggests the Supreme Court reserved in *Hill.*

[9] *Oliveto v. Circuit Court for Crawford County,* 194 Wis. 2d 418, 533 N.W.2d 819 (1995), cites the *Currie* case as *Contempt in State v. Dewerth;* however, it is the identical case.

not received due process because he had had no hearing and did not get to speak to the charges levied. The Supreme Court explained,

> In exercise of the right to be heard, however briefly, . . . the putative contemnor might establish, for example, that it was a case of mistaken identity, or, also by way of affirmative defense, that he was mentally incompetent. Other matters in explanation or mitigation might lessen the harshness of the legislative judgment or avoid punishment altogether.

*Groppi,* 404 U.S. at 503. This chain of reasoning shows that the right to be heard in the context of summary contempt differs from that discussed solely in relationship to sentencing after a criminal conviction because decisions such as *Groppi* and *Currie* combine the right to speak in one's own defense against the charges brought, with speech in mitigation of punishment. *See also Taylor v. Hayes,* 418 U.S. 488, 498–99 (1974) (concluding that a contempt proceeding requires reasonable notice and an opportunity to be heard except in the most extraordinary cases). Accordingly, discussions of a right to speak in the context of a contempt proceeding are a combination of opportunities to speak, *i.e.,* the Fourteenth Amendment's due process right to be heard as a defense against the contempt charges and the potential to speak in mitigation of the sentence, as codified by statute. Those cases do not support the conclusion that there is a federal or state constitutional right of allocution when sentencing subsequent to a criminal conviction is all that is before the court.

¶ 34. Furthermore, we have never concluded that there is a due process right of allocution prior to sentencing after a criminal trial, that is grounded in the Wisconsin Constitution. However, in *Nicholas v. State,* 49 Wis. 2d 678, 183 N.W.2d 8 (1971), we did address the

question of whether a defendant is "deprived of a constitutional right" when a trial court fails "to ask the defendant before imposing sentence whether he had anything to say why sentence should not be imposed." *Id.* at 681. In answering this question, we reviewed the development of the right of allocution from its origins in the common law to the right that is codified in Wis. Stat. § 972.14(2). *Id.* at 682. We cited the United States Supreme Court's decision in *Hill,* and we noted that *Hill* had concluded that any federal right of allocution is purely statutory. *Id.* at 682–83. We then held that the failure to ask a defendant whether he or she had anything to say before sentencing does not constitute reversible error, but we requested that trial courts comply with the statutory directive of § 972.14(2). *Id.* Therefore, although we were presented with the question of whether a violation of the right of allocution was a constitutional violation, we concluded it was a statutory violation. No one has contended that *Nicholas* is not good law. Accordingly, we decline to establish a right to allocution under the Wisconsin Constitution.

¶ 35. We note that the right of allocution at sentencing is set out in Wis. Stat. § 972.14(2), which states:

> Before pronouncing sentence, the court shall ask the defendant why sentence should not be pronounced upon him or her and allow the district attorney, defense counsel and defendant an opportunity to make a statement with respect to any matter relevant to the sentence.

This statutory right permits a convicted defendant personally to make a statement in open court prior to

sentencing.[10] As we explained above, Greve fully exercised his statutory right of allocution in open court prior to the imposition of the sentence that resulted from his plea. Possibly because of this, Greve does not contend that his statutory right was violated, requiring suppression of his statements. Instead, he attempts to bootstrap a claimed "due process right" of allocution onto the statutory right, in an effort to protect out-of-court statements to a third party. However, there is nothing in § 972.14(2) that implies statements to third parties or out-of-court statements were contemplated as part of the right of allocution, and the common law history underlying § 972.14(2) belies that assertion as well.[11] Accordingly, a plurality of the court concludes that the right of allocution is that right set forth in § 972.14(2), and we answer the second certified question in the negative.

---

[10] The Wis. Stat. § 972.14(2) description of allocution as a personal statement by a convicted defendant is consistent with a common definition of allocution as an in-court statement personally made by a convicted defendant. *See, e.g.:*

> Allocution: . . . An unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence.

*Black's Law Dictionary* 75 (7th ed. 1999). It is also consistent with the statutory statement for the federal right of allocution set out in Fed. R. Crim. P. 32.

[11] *See Green v. United States,* 365 U.S. 301, 304 (1961) (explaining that a defendant's right to speak personally to the court before sentencing existed at English common law since at least 1689).

## F. Public Policy

¶ 36. The third question certified by the court of appeals is whether a defendant's statements made during the preparation of his sentencing memorandum should be kept confidential as a matter of public policy. As support for such a conclusion, Greve argues that some defendants are not comfortable talking with the department of corrections employees who conduct presentence investigations. He says that court-ordered PSIs contain subjective components that are not always reliable. He also asserts that not affording confidentiality to the statements a defendant makes to the preparer of the sentencing memorandum will hinder the flow of information to the sentencing court and have a detrimental effect on the sentencing court's ability to fashion a reliable and accurate sentence. Lastly, he says that by affording confidentiality to a defendant's statement in the court-ordered PSI but not to a defendant's sentencing memorandum, we are encouraging inconsistent results.

¶ 37. The State counters that we should not afford Greve the remedy he seeks on public policy grounds. It asserts that if Greve wants the court to have accurate and complete information, he can communicate with the department of corrections staff member who is assigned to prepare the report. If he wants to take responsibility for his crime, he already has that avenue open to him in a venue that will provide that his statements are not used in the event of a subsequent trial, when he speaks with the preparer of the court-ordered PSI. The State also asserts that it is only the court-ordered PSI that is objective; Greve's sentencing

memorandum is an advocacy document prepared by someone Greve or his attorney hired. We agree with the State.

¶ 38. Additionally, as we mentioned above in ¶ 28, affording confidentiality to a defendant's statements made during the course of the preparation of his sentencing memorandum could actually have the effect of limiting the objective information available to the circuit court at sentencing. A holding in Greve's favor could permit a defendant to be less forthcoming with the preparer of the court-ordered PSI in order to give more information and weight to his advocacy document. Such a result is contrary to the public's interest.

¶ 39. We conclude we have been presented with no public policy grounds sufficient to justify extending confidentiality to statements a defendant makes to the preparer of his or her sentencing memoranda. We therefore answer the third certified question in the negative.

## III. CONCLUSION

¶ 40. The majority opinion concludes that neither Wis. Stat. § 972.15 nor our decision in *Crowell* applies to a defendant's sentencing memorandum. A plurality of the court concludes that a defendant's constitutional right to due process will not be violated by use of his or her sentencing memorandum in a subsequent criminal trial; and the majority concludes that public policy considerations do not support extending a confidentiality requirement to a defendant's sentencing memorandum.

*By the Court.*—The order of the circuit court is reversed.

¶ 41. N. PATRICK CROOKS, J. (*concurring*). I conclude that whether allocution is required by due

process is not a dispositive issue in this case, because a private pre-sentence investigation and report or sentencing memorandum do not involve the right of allocution. The lead opinion[1] reaches the same conclusion, yet it goes on to decide, unnecessarily, the due process issue. *See* lead op., ¶ 35. I agree, however, with the decision of the lead opinion to reverse the Walworth County Circuit Court's decision to deny the State's motion to admit portions of the defendant's sentencing memorandum into evidence at his retrial on charges of first-degree sexual assault of a child.

¶ 42. I write separately because I disagree with the lead opinion's decision to decide whether there is a constitutional right to allocution under either the United States or Wisconsin Constitutions. *See* lead op., ¶¶ 25–34. Such a decision on the constitutional issues is unnecessary, since it is clearly not material to the holding in this case. I would wait to analyze whether there is a constitutional right to allocution, until a case involving the necessity to decide such issue is presented to this court.

¶ 43. I further disagree with the lead opinion's decision to withdraw language from our decisions in *State v. Borrell,* 167 Wis. 2d 749, 482 N.W.2d 883 (1992) and *Bruneau v. State,* 77 Wis. 2d 166, 252 N.W.2d 347 (1977). *See* lead op., ¶ 31. The decision to withdraw such language is questionable in regard to the United States Constitution because of the decisions of federal circuit courts, *see, Boardman v. Estelle,* 957 F.2d 1523 (9th Cir. 1992) and *United States v. Murphy,* 530 F.2d 1 (4th Cir. 1976), and the United States Supreme Court in

---

[1] The opinion written by Justice Patience D. Roggensack is a lead opinion in regard to the constitutional issue concerning the right of allocution. However, the opinion is a majority opinion with respect to the statutory interpretation issue.

*Hill v. United States,* 368 U.S. 424 (1962) and in *Green v. United States,* 365 U.S. 301 (1961). *See also* lead op., ¶ 31, n.7. In the Wisconsin Constitution the right to due process is contained in Article I, § 8.[2] Moreover, when read in conjunction with this state's recent constitutional amendment with respect to victim's rights, Article I, § 9(m),[3] the conclusion that, in the future, we may hold that there is such a right to allocution under the Wisconsin Constitution becomes, I believe, a strong possibility, especially when considered in terms of equal protection, as well as due process.

¶ 44. For the foregoing reasons, I respectfully concur.

¶ 45. DAVID T. PROSSER, J. *(dissenting).* From time to time, this court needs to step back from the narrow disputes in a particular case to seek a broader perspective on the workings of our criminal justice

---

[2] Article I, § 8 of the Wisconsin Constitution states, in relevant part: "No person may be held to answer for a criminal offense without due process of law . . . ."

[3] Article I, § 9(m) of the Wisconsin Constitution states, in relevant part:

> This state shall treat crime .victims, as defined by law, with fairness, dignity and respect for their privacy. This state shall ensure that crime victims have all of the following privileges and protections as provided by law: timely disposition of the case; the opportunity to attend court proceedings unless the trial court finds sequestration is necessary to a fair trial for the defendant; reasonable protection from the accused throughout the criminal justice process; notification of court proceedings; the opportunity to confer with the prosecution; *the opportunity to make a statement to the court at disposition;* restitution; compensation; and information about the outcome of the case and the release of the accused. The legislature shall provide remedies for the violation of this section. Nothing in this section, or in any statute enacted pursuant to this section, shall limit any right of the accused which may be provided by law. (Emphasis added).

system. The court did this recently in *State v. Gallion*, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, in which it underscored the vital need for sound discretion in sentencing in the wake of truth-in-sentencing legislation.

¶ 46. Truth-in-sentencing imposes new responsibilities on a circuit court. As a general rule, whenever a court sentences a person to imprisonment in a Wisconsin state prison, the court must impose a bifurcated sentence consisting of a fixed term of confinement followed by a fixed term of extended supervision. With few exceptions, these terms, once set, will not be altered. A person serving a bifurcated sentence is not eligible for parole. This means that the traditional safety valve for a functionally excessive sentence has been removed.

¶ 47. Thus, truth-in-sentencing creates added pressure for the court to produce a sentence that is reasonable, just, and rationally explained. Such a sentence requires the court to have the best information available, delivered in a timely manner. As we observed in *Gallion,*

> Because we recognize the difficulty in providing a reasoned explanation [for a sentence] in isolation, we encourage circuit courts to refer to information provided by others. Courts may use counsels' recommendations for the nature and duration of the sentence and the recommendations of the presentence report as touchstones in their reasoning.

*Id.,* ¶ 47.

¶ 48. There are portions of the lead opinion in this case that mesh perfectly with the concerns we expressed in *Gallion*.[1] *See* Lead op., ¶¶ 8, 9. For instance, the lead opinion recognizes that the court must possess the "fullest information possible concerning the defendant's life and characteristics" to facilitate the selection of an appropriate sentence. Lead op., ¶ 8 (quoting *State v. Knapp*, 111 Wis. 2d 380, 385, 330 N.W.2d 242 (Ct. App. 1983).[2] But the lead opinion's ultimate conclusion is inconsistent with this sound policy, and that is the reason I respectfully dissent.

## I

¶ 49. Truth-in-sentencing is one of several evolving factors that affect contemporary sentencing. As an example, in Wisconsin and throughout the country, there is a new emphasis on victims' rights. Article I, Section 9m of the Wisconsin Constitution affords certain rights to victims of crime, including "the opportunity to make a statement to the court at disposition." This constitutional provision is amplified in Wis. Stat. § 950.04.

¶ 50. As a result, in a felony case the circuit court may receive a blizzard of information: (1) statements from the victim and/or the victim's friends and family; (2) other testimonial and documentary evidence offered

---

[1] The opinion of Justice Patience D. Roggensack is a lead opinion, ¶¶ 26–35, in regard to the constitutional issue of a due process right to allocution. It is, however, the majority opinion with respect to the interpretation of Wis. Stat. § 972.15 and in reversing the determination of the circuit court.

[2] *See also State v. Carter*, 208 Wis. 2d 142, 146, 560 N.W.2d 256 (1997) ("We conclude that a circuit court should have available to it all information relevant to determining the appropriate sentence.").

by the state or defense; (3) a presentence investigation conducted by the Department of Corrections; (4) an oral presentation from the prosecutor; (5) argument and recommendation from defense counsel; and (6) allocution by the defendant. At the conclusion of a sometimes emotional, sometimes confrontational sentencing hearing, the court faces the challenge of weighing all relevant information and then incorporating it into a reasoned, satisfactorily explained sentence.

¶ 51. In reality, and by necessity, the court may contemplate the essence of both the sentence and its rationale before the hearing begins.[3] Consequently, defense counsel would be foolish not to seek additional ways to effectively communicate the defendant's position to the court, and to communicate that position well before sentencing. A sentencing memorandum from the defendant is a logical option.

## II

¶ 52. A defendant's sentencing memorandum has no set format, but it is intended to serve at least two objectives. First, it corrects any erroneous information or analysis in the court-ordered presentence investigation (PSI), when there is a PSI and when the PSI is issued first. Second, it accentuates mitigating factors about the defendant and the crime.

¶ 53. An informative article about sentencing memoranda explains that:

> There is . . . neither a set format . . . nor a prescribed set of arguments that the attorney can make. In some cases, the presentation in the [defendant's sentencing

---

[3] "[A] proper exercise of discretion contemplates that a court will give advance thought to the particular crime, the criminal and the community." *State v. Varnell,* 153 Wis. 2d 334, 338, 450 N.W.2d 524 (Ct. App. 1989).

memorandum] will focus on the hardship of the defendant's life and environmental factors such as child abuse. In others, the emphasis will be on the defendant's crime-free life and his contributions to society. No matter what the arguments ... the defendant's lawyer must include a section on the defendant's background and history. Most of the mitigating circumstances will appear in this section, and, *when appropriate, the section should include a defendant's version of the offense. Given the importance of expressions of remorse in the sentencing process, the section also should include candid remarks on the subject of remorse, and should explain why the defendant committed the criminal act.*

John L. Carroll, *The Defense Lawyer's Role in the Sentencing Process: You've Got to Accentuate the Positive and Eliminate the Negative,* 37 Mercer L. Rev. 981, 1000–01 (1986) (emphasis added).

¶ 54. It is hard to dispute the article's advice that a defendant who wishes to influence the court at sentencing should attempt to explain his motivation, express his remorse, and apologize to his victim.

### III

¶ 55. The issue presented in this case is whether a defendant's post-conviction statements, contained in a defendant's sentencing memorandum, relating to the offense of which the defendant was convicted, may be used by the state as direct evidence against the defendant in a new trial for the same offense *after* the defendant successfully withdraws his plea or *after* the defendant's conviction of the offense is reversed.

¶ 56. To my mind, this is an issue that requires us to step back and reflect upon coherent policy in our criminal justice system.

¶ 57. My first premise is that a circuit court needs and benefits from useful, timely information as it prepares to sentence a criminal defendant.

¶ 58. My second premise is that a defendant's sentencing memorandum can and should provide useful, timely information to the court. Ideally, a sentencing memorandum should give the court insightful information about what makes a defendant tick, so that the court can properly calculate the defendant's prognosis for rehabilitation and need for punishment. If defense counsel waits until the sentencing hearing to present mitigating evidence, it may be too little and too late.

¶ 59. My third premise is that the majority severely disadvantages a defendant who wishes to file a sentencing memorandum with the court because it precludes the defendant from including any inculpatory statement about the offense in the memorandum without giving up use immunity for that inculpatory statement if there is a new trial. Fear of having one's own truthful words used against him is bound to chill a defendant's candor and substantially nullify the usefulness of the memorandum.

¶ 60. As I read the lead opinion, a defendant cannot repeat word-for-word to a person preparing his sentencing memorandum what he told the person preparing the PSI, without losing the protections of the PSI statement recognized in *State v. Crowell,* 149 Wis. 2d 859, 440 N.W.2d 352 (1989). Correspondingly, a defendant cannot (1) expand his discussion of the offense; (2) personally clarify error in the PSI's description of the offense; (3) explain his motivation for the offense; or (4) personally express apology and remorse for the offense without putting himself in jeopardy. The logic of the lead opinion strips a defendant of use

478

immunity even if he only quotes from his statement in the PSI because, unlike the PSI, the sentencing memorandum is not a confidential document. In short, the majority sharply curtails a defendant's right to make his own case at sentencing.

¶ 61. The State reassures us that the defendant can say everything he wants to say in the PSI and receive immunity for it. This does not explain what the defendant should do if there is no PSI,[4] or if the defendant forgets something until after he sees the written PSI, or if the PSI leaves something out or gets something wrong. In *State v. Watson*, 227 Wis. 2d 167, 595 N.W.2d 403 (1999), this court acknowledged that "some of the information in a PSI may be unverified and some of it may be inaccurate." *Id.* at 194. A defendant is entitled to be sentenced on the basis of true and correct information.

¶ 62. In essence, the State contends that the defendant has no right to make the case for himself at sentencing in the way he wants to make it, unless he is willing to surrender his rights against self-incrimination if there is a second prosecution.

¶ 63. The majority forces a defendant to choose between preserving the immunity for statements made in the PSI, or making the most effective case he can in his own sentencing memorandum. He cannot do both. If the defendant chooses to preserve his immunity, he must restrict the range and candor of his sentencing memorandum. This will limit the defendant's right to make his case to the court, and it may deprive the court of information. If the defendant speaks candidly about the offense in his sentencing memorandum, he must

---

[4] The lead opinion reiterates that "a PSI is not required prior to sentencing" (citing cases). Lead op., ¶ 10.

479

give up the protections afforded to his statements under Wis. Stat. § 972.15. This severely undermines the *Crowell* decision.

## IV

¶ 64. The lead opinion dismisses two potential bases for protecting a defendant's inculpatory statements in a sentencing memorandum. First, it concludes that Wis. Stat. § 972.15, by its terms, does not cover a defendant's sentencing memorandum. Second, it concludes that there is no federal or state constitutional due process right of allocution. The first conclusion is reasonable; the second is problematic.

¶ 65. The lead opinion explains that allocution is a *statutory* right to speak in open court prior to sentencing, Wis. Stat. § 972.14(2), and that the exercise of that right does not require suppression of any statement made by a defendant *outside* the courtroom to the person who prepares a sentencing memorandum. Lead op., ¶¶ 31, 34, 35.

¶ 66. In providing this explanation, the lead opinion dodges the obvious question whether a statement made by a defendant *inside* the courtroom at a sentencing hearing is protected from use in a new trial. For the lead opinion to answer this question directly would be awkward. Determining that an in-court statement is protected would dilute the lead opinion's arguments against use immunity for a defendant's statements in a sentencing memorandum. Determining that an in-court statement is not protected would render the statutory right of allocution meaningless for some defendants.

¶ 67. I acknowledge that an unconditional due process right of allocution would present some disconcerting questions. For instance, does a defendant have a

due process right of allocution in cases where the court has no discretion to deviate from a determinate sentence?[5] Does a defendant have a due process right of allocution in every misdemeanor case? Does a defendant have a due process right of allocution if his counsel speaks but the defendant is never asked? Does a defendant have a due process right of allocution if his statutory right is overlooked but the defendant does not object and the court imposes a reasonable, satisfactorily explained sentence?

¶ 68. The last question is similar to the question posed in *Hill v. United States,* 368 U.S. 424 (1962). Hill was convicted of two felonies after a jury trial. At sentencing he was *not* asked whether he wished to make a statement in his own behalf. The district judge, after noting his familiarity with the defendant's character and history, imposed sentence and there was no appeal. Five years later Hill commenced litigation under 28 U.S.C. § 2255 to vacate his sentence, claiming he had been denied the right of allocution under Rule 32(a) of the Federal Rules of Criminal Procedure.[6] The Court

---

[5] *See State v. Lindsey,* 203 Wis. 2d 423, 554 N.W.2d 215 (Ct. App. 1996).

[6] At the time of the decision in *Hill v. United States,* 368 U.S. 424 (1962), Rule 32(a) of the Federal Rules of Criminal Procedure read, in part, as follows:

(a) Sentence. .

(1) Imposition of Sentence. Sentence shall be imposed without unreasonable delay. Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment.

The equivalent text now appears in Rule 32(i)(4) and reads:

decided that "the failure to follow the formal requirements of Rule 32(a) is not of itself an error that can be raised by collateral attack." *Hill,* 368 U.S. at 426. The Court added: "It is to be noted that we are not dealing here with a case where the defendant was affirmatively denied an opportunity to speak during the hearing at which his sentence was imposed." *Id.* at 429. This caveat puts in context the Court's statement that:

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not *of itself* an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error that is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure.

*Id.* at 428 (emphasis added).

¶ 69. The *Hill* court decided that a defendant does not have an *unconditional* due process right of allocution. However, because the *Hill* case involved a collateral attack on the defendant's sentence, *id.* at 425, its holding is necessarily limited, and it must be cited with caution. Thus, it would be dangerous to rely on *Hill* for the proposition that a defendant has *no* due process

---

(i) (4) Opportunity to Speak.

(A) By a Party. Before imposing sentence, the court must:

(i) provide the defendant's attorney an opportunity to speak on defendant's behalf;

(ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence; and

(iii) provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney.

right to allocution, especially when a statute grants such a right and the defendant timely seeks to assert that right.

¶ 70. In any event, this court has twice stated that due process affords a defendant the right of allocution. *State v. Borrell,* 167 Wis. 2d 749, 772, 482 N.W.2d 883 (1992); *Bruneau v. State,* 77 Wis. 2d 166, 174–75, 252 N.W.2d 347 (1977). *See also State v. Perez,* 170 Wis. 2d 130, 138, 487 N.W.2d 630 (Ct. App. 1992); *State v. Varnell,* 153 Wis. 2d 334, 340, 450 N.W.2d 524 (Ct. App. 1989) ("due process inheres in the right of allocation at sentencing"). The lead opinion asserts that this court's pronouncement of that right in 1977 was erroneous. Lead op., ¶ 31. It is bad enough to rescind a recognized constitutional right; it is quite unacceptable to rescind that right retroactively.

¶ 71. In my view, this case should be analyzed differently. Much to its credit, the State quotes from *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976): "The fundamental requirement of due process is the *opportunity* to be heard 'at a meaningful time and in a meaningful manner' " (emphasis added). There can be no doubt that sentencing is a critical stage in criminal cases,[7] and ordinarily, the defendant has a right to be heard. This is recognized at the federal level in Rule 32(i)(4) of the Federal Rules of Criminal Procedure and in Wis. Stat. § 972.14(2).

¶ 72. Section 972.14(2) gives the defendant two opportunities to speak in a sentencing hearing: (1) "the court shall ask the defendant why sentence should not be pronounced upon him or her;" and (2) the court shall

---

[7] *State v. Strickland,* 27 Wis. 2d 623, 635, 135 N.W.2d 295 (1965), *partial abrogation recognized by Ernst v. State,* 43 Wis. 2d 661, 170 N.W.2d 713 (1969).

"allow . . . defendant an opportunity to make a statement with respect to any matter relevant to the sentence." The lead opinion diminishes these opportunities by compromising the defendant's ability to tell the truth.

¶ 73. Section 972.14(2) also gives defendant's counsel the opportunity to make a statement. Sometimes defense counsel's presentation will eliminate any actual need for a defendant to speak personally. But sometimes, as Justice Frankfurter wrote in *Green v. United States*, 365 U.S. 301, 304 (1961): "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." In most situations, the defendant must "have the *opportunity* to present to the court his plea in mitigation." *Id.* (emphasis added).

¶ 74. The law is not static. As noted above, the victim of a crime now has a constitutional right to "the *opportunity* to make a statement to the court at disposition." Wis. Const. art. I, § 9m (emphasis added). Consequently, the defendant should have an equivalent right. This right may not be an unconditional right but it is most assuredly a significant right.

V

¶ 75. In lieu of any formal holding on due process, I would immunize a defendant's inculpatory statements in a sentencing memorandum from future use by the state as direct evidence against the defendant on grounds that it furthers sound policy in the administration of justice.

¶ 76. In our 1999 *Watson* decision, 227 Wis. 2d at 194, we stated: "The defendant is entitled to file his own presentence memorandum and to present testimony at

the sentencing hearing." In the 1992 *Perez* decision, 170 Wis. 2d at 141–42, the court of appeals stated: "[T]he defendant has the opportunity to file his own presentence memorandum with the court which can present what the defendant believes to be true and correct information the court should rely upon in sentencing." These unremarkable passages indicate that sentencing memoranda have become a recognized part of criminal sentencing procedure. As such, judicial policy should promote their quality and facilitate their value to the court.

¶ 77. The lead opinion contends that affording protection to a defendant's inculpatory statements in a sentencing memorandum could undercut the court-ordered PSI: "[I]f a defendant's sentencing memorandum were to achieve the same status as a court-ordered PSI, a defendant may be less likely to be forthcoming with a department of corrections staff member over whom he or she has no control. This could cause the sentencing court to have more limited information available to it in the PSI." Lead op., ¶ 28.

¶ 78. This analysis does not square with the defendant's incentives at sentencing, especially when the defendant—for either strategic or cathartic reasons —opts to reveal information that would normally be harmful to him. Simply stated, when the defense strategy is candor, it would be unwise for a defendant to attempt to game the system by selectively withholding factual information from the PSI in order to control its spin in a sentencing memorandum. The court has the prerogative not only to consider a defendant's remorse but also a defendant's cooperation. *Gallion*, 2004 WI 42, ¶ 43, n.11. If a defendant deliberately withholds information from the preparer of the PSI so that he can pour out inculpatory facts or admissions to the preparer of

his own sentencing memorandum, the court is likely to sense noncooperation and conclude that the defendant's remorse is insincere. In short, a realistic defendant has a strong incentive to be as candid in the PSI as in his own sentencing memorandum.

¶ 79. The lead opinion also suggests that a sentencing memorandum is less reliable than an objectively prepared PSI because the sentencing memorandum is a tool of advocacy. This overlooks the fact that the very information the state would seek to use at a new trial is inculpatory information that tends to establish the defendant's guilt. This damaging information is, for the most part, extremely reliable, which is precisely why the state seeks to use it and why it is valuable to the court.

¶ 80. A third reason for opposing use immunity for the defendant's statements is that the state should not be deprived of reliable evidence in a new trial. The immediate answer to this is that the state either tried the defendant once before or was prepared to try him when he entered a plea . . . without his post-conviction inculpatory statements in the sentencing memorandum.

¶ 81. In addition, a defendant's inculpatory statements in a plea colloquy, Wis. Stat. § 904.10, and in a PSI, § 972.15, may not be used in any future proceeding, regardless of how reliable and helpful they might be to the state. Moreover, a defendant's statements in a *Goodchild*[8] hearing are inadmissible as direct evidence, although they may be used for impeachment. *See State v. Schultz*, 152 Wis. 2d 408, 426, 448 N.W.2d 424 (1989). Until advised otherwise, I believe a defendant's state-

---

[8] *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

ments in court at sentencing may not be used against him as direct evidence in a new trial—in part because a defendant may be forced to answer statements made by a victim at sentencing or to correct inaccuracies in the PSI.[9] A contrary holding would trigger a defendant's rights against self-incrimination at sentencing, eliminating the presumption that a defendant should come clean about any accomplices in his crime. *See State v. Kaczynski,* 2002 WI App 276, 258 Wis. 2d 653, 654 N.W.2d 300. If a defendant's statements at sentencing are not to be protected in the future, the court has a duty to say so now.

¶ 82. To sum up, the circuit court had legitimate reasons for excluding the defendant's incriminating statements in the defendant's sentencing memorandum. There was existing precedent for a due process right of allocution. There was concern that permitting the statements to be used as direct evidence against the defendant would undermine the *Crowell* decision. The State offered no urgent need for using the evidence. The use of the evidence to impeach the defendant's testimony in a new trial is a separate question. On policy grounds, on these facts, I would affirm.

¶ 83. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this dissent.

---

[9] A defendant's statements to the court at a sentencing hearing following a plea are arguably protected by Wis. Stat. § 904.10 ("Evidence of statements made in court . . . in connection with any of the foregoing pleas . . . is not admissible"). But statements made to the court at sentencing *after a trial* do not appear to be covered by the statute.