STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

T.J. INTERNATIONAL, INC., Defendant-Appellant,

NORCO WINDOWS, INC., Defendant,

JELD-WEN, INC., Defendant-Co-Appellant.

Supreme Court

*No. 99–2803. Oral argument February 27, 2001.—Decided June 28, 2001.*

2001 WI 76

(Also reported in 628 N.W.2d 774.)

For plaintiff-respondent-petitioner the cause was argued by *Jerry L. Hancock*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For defendant-appellant, T.J. International, Inc., there was a brief by *Robert H. Duffy, Amy Pope Brock*, and *Quarles & Brady, LLP*, Milwaukee, and oral argument by *Robert H. Duffy*.

For defendant-co-appellant, Jeld-Wen, Inc., there was a brief by *Lawrence T. Lynch, Anne Berleman Kearney*, and *Foley & Lardner*, Milwaukee, and oral argument by *Lawrence T. Lynch*.

An amicus curiae brief was filed by *Sandra Graf Radtke* and *Murphy, Gillick, Wicht & Prachthauser*, Brookfield, on behalf of the Midwestern Industrial Council, United Brotherhood of Carpenters & Joiners of America

¶ 1. DIANE S. SYKES, J. This case arises under Wisconsin's Business Closing and Mass Layoff Law, Wis. Stat. § 109.07 (1995–96),[1] and presents the question of whether a "business closing" under the statute includes the sale of business assets where there is no interruption in business operations and the "business" is therefore not actually "closed." The statute requires employers to give 60-days' notice—to their employees and certain government officials—of any "business closing," defined as a "permanent or temporary shutdown of an employment site."

¶ 2. Defendant Norco Windows, Inc. sold its window manufacturing plant in Hawkins, Wisconsin, to defendant Jeld-Wen, Inc. The plant continuously oper-

---

[1] All statutory references are to the 1995–96 edition unless otherwise noted.

ated without interruption during the transfer of ownership, and Jeld-Wen hired all but 47 of the 396 Norco employees who applied for jobs with the new ownership.

¶ 3. The employees' collective bargaining representative filed a complaint with the Department of Workforce Development, alleging a violation of the business closing law. The Department concluded that the sale constituted a "business closing" under the statute, and ordered both the seller and the buyer to pay penalties for failure to give notice. The circuit court agreed. The court of appeals did not, and reversed.

¶ 4. We conclude that the definition of "business closing" in Wis. Stat. § 109.07(1)(b) does not include the sale of business assets where there is no actual operational shutdown—permanent or temporary—of the employment site. Where, as here, the transfer of ownership continues rather than interrupts or ceases the operation of the employment site, there is no "business closing" under the statute, and no 60-day notice of the sale is required. Accordingly, we affirm the court of appeals' reversal of the judgment of the circuit court.

I

¶ 5. The facts are stipulated. Norco windows have been manufactured in Hawkins, Wisconsin, for more than 75 years. In 1996 the plant was owned by Norco Windows, Inc., a division of T.J. International, Inc. On July 1, 1996, Norco sold the business to Jeld-Wen, Inc. pursuant to an asset purchase agreement that had been negotiated during the several months leading up to the sale.

¶ 6. On April 8, 1996, Norco sent its employees the first of two letters detailing its intention to sell the plant. This first letter informed employees that T.J.

484

International had signed a letter of intent to sell 100 percent of Norco Windows to Jeld-Wen. The letter also indicated that Jeld-Wen would continue to operate Norco's existing manufacturing facilities and that total employment at those facilities was expected to remain at approximately 700 people.

¶ 7. In the second letter, dated June 7, 1997, Norco informed its employees that because the sale was an asset-based transaction, they would no longer be employed by Norco after the deal was closed. Norco also stated its understanding that Jeld-Wen would accept applications from any Norco associates interested in working for Jeld-Wen, and indicated that further information on the application process would be forthcoming. The letter emphasized that "Jeld-Wen will make all hiring decisions for its work force, and any failure by Jeld-Wen to hire an associate should be expected to be permanent."

¶ 8. On the same day, Jeld-Wen also sent a letter to all Norco employees discussing its plan to buy the facility. Jeld-Wen stated that, while it had not yet made any decisions about the details of employment at the plant, it would be offering an "attractive package of wages and fringe benefits," and all Norco employees would be given an opportunity to apply.

¶ 9. The sale was closed on July 1, 1996. At that time, Norco and Jeld-Wen executed an amendment to the asset purchase agreement stating that Jeld-Wen agreed to:

> [M]ake all reasonable efforts to hire substantially all of Seller's employees to operate Buyer's new business at each acquired plant site.

Nothing contained in this Section shall in any way give any rights to any person or entity other than Buyer, Seller or Surety.

¶ 10. Simultaneous with the sale, Norco terminated its 459 employees at the Hawkins plant. During and after the change of ownership, operations at the plant continued without interruption, and the parties affirmatively stipulated that the sale "was not a temporary cessation in business operations." Jeld-Wen hired 349 of the 459 Norco employees. The majority of these employees missed no work. Sixty-three former Norco employees chose not to apply with Jeld-Wen. In all, only 47 former Norco employees who did apply were not hired by Jeld-Wen.

## II

¶ 11. Shortly before the sale was finalized, on June 21, 1996, James Lee, union president of Local 1801, United Brotherhood of Carpenters and Joiners of America, filed a complaint against Norco with the Equal Rights Division of the Department of Workforce Development (the Department), pursuant to Wis. Stat. § 109.07(4).[2] The complaint alleged that Norco had failed to give 60-days' notice "that the plant would be closed July 1 and reopened by a new owner."

¶ 12. The Department issued its initial determination on July 18, 1997, concluding that the asset sale constituted a "business closing" within the meaning of Wis. Stat. § 109.07(1)(b), and that Jeld-Wen violated the statute by failing to provide 60-days' written notice to those Norco employees who were not hired within six

---

[2] Wisconsin Statute § 109.07(4)(a) provides that: "[a]n employe whose employer fails to notify timely the employe under sub. (1m) may file a claim with the department."

months of the sale. The Department also concluded that Norco violated the statute by failing to give 60-days' notice of the "business closing" to the president of the village board of trustees or to the village manager for the Village of Hawkins. *See* Wis. Stat. § 109.07(4m)(a). The Department ordered Jeld-Wen to pay penalty wages and benefits totaling $306,455.04, and a fine of $30,000 ($500 per day surcharge provided in Wis. Stat. § 109.07(4m)(a) for failing to notify the highest official of the Village of Hawkins).

¶ 13. Norco, Jeld-Wen, and the union each requested a review of the initial determination, and on September 15, 1997, the Department issued a final determination, affirming and adopting the initial determination in its entirety, with the exception of the penalty wage calculations. The final determination reexamined the penalty wage calculations and concluded that extra payments made to affected employees should be deducted from the overall wage penalty liability.

¶ 14. On November 25, 1997, the Department issued an amended final determination which concluded that both the initial determination and the final determination erred by ordering Jeld-Wen, rather than T.J. International, to pay the surcharge provided in Wis. Stat. § 109.07(4m)(a). The Department also determined that the penalties owed to the affected employees should be reduced by the severance payments paid by T.J. International. The amended final determination set the amount of penalty wages at $187,590.31.

¶ 15. On December 12, 1997, the Department referred the case to the Department of Justice for recovery of the penalties, pursuant to Wis. Stat.

§ 109.07(4)(b).[3] On March 11, 1998, the State filed a complaint in Rusk County Circuit Court. The complaint alleged that the sale of business assets at the Hawkins plant was a "business closing" within the meaning of § 109.07(1)(b), and that the defendants failed to comply with the statute's notice requirements by failing to give 60-days' written notice.

¶ 16. The facts were stipulated and all parties moved for summary judgment. The State argued that the sale of Norco's assets to Jeld-Wen constituted a "business closing" under the statute, requiring 60-days' notice, which was not given. T.J. International (for itself and Norco) and Jeld-Wen argued that the asset sale was not a "business closing," and even if it was, the amendment to the asset purchase agreement, in which Jeld-Wen agreed to "make all reasonable efforts to hire substantially all" of Norco's employees, was sufficient to trigger a statutory exception to liability for failure to give notice. See Wis. Stat. § 109.07(6). Additionally, Jeld-Wen moved for dismissal on two jurisdictional grounds: (1) that it had never been named as an employer in the initial claim filed with the Department, and (2) that the Department failed to comply with Wis. Stat. § 109.07(4)(b) by not referring the claim to the State within 180 days after the claim was filed with the Department.[4]

---

[3] Wisconsin Statute § 109.07(4)(b) provides:

> If the [Department] does not recover payment within 180 days after a claim is filed or within 30 days after it notifies the employe of its determination under par. (a), whichever is first, the [Department] shall refer the claim to the department of justice. The department of justice may bring an action in circuit court on behalf of the employe to recover the payment under sub. (3).

[4] Jeld-Wen also raises these jurisdictional challenges in this appeal. We have concluded that the statute does not apply

¶ 17. The Circuit Court for Rusk County, Judge Frederick A. Henderson, granted the State's motion for summary judgment. After resolving the jurisdictional issues against Jeld-Wen, the court accepted the State's argument that the asset sale constituted a "business closing" under the statute. The court also concluded that the amendment to the asset purchase agreement was inconsistent with the language of the statutory exception, and, in any event, since Jeld-Wen did not hire substantially all affected employees, the exception to liability for failure to give notice did not apply.

¶ 18. The court of appeals reversed, concluding that the plain language of the statute's definition of "business closing" required a "permanent or temporary shutdown of an employment site," and because the Hawkins plant never shut down, there was no "business closing" within the meaning of the statute. *State v. T.J. Int'l, Inc.*, 2000 WI App 181, ¶ 10, 238 Wis. 2d 173, 617 N.W.2d 256. We accepted the State's petition for review.

## III

¶ 19. We review a circuit court order granting or denying a motion for summary judgment independently, using the same methodology as the circuit court. *Jankee v. Clark County*, 2000 WI 64, ¶ 48, 235 Wis. 2d 700, 612 N.W.2d 297. Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

in the first instance; we therefore decline to address whether the union or the Department fulfilled the statute's jurisdictional requirements.

¶ 20. The summary judgment motion in this case was submitted on stipulated facts and presents a question of statutory interpretation, which we review de novo. *State v. Sostre*, 198 Wis. 2d 409, 414, 542 N.W.2d 774 (1996). Statutory interpretation begins with the language of the statute, and if the language is plain and unambiguous, we apply it without further inquiry into extrinsic interpretive aids. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 281, 548 N.W.2d 57 (1996). If statutory language is ambiguous, that is, if " 'reasonable minds could differ as to its meaning,' " we look to the scope, history, context, subject matter, and purpose of the statute to help establish its proper interpretation. *Brauneis v. LIRC*, 2000 WI 69, ¶ 21, 236 Wis. 2d 27, 612 N.W.2d 635 (quoting *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 662, 539 N.W.2d 98 (1995)).

## IV

¶ 21. This claim arises under Wis. Stat. § 109.07, Wisconsin's Business Closing and Mass Layoff Law. Everyone agrees that the relevant statutory language is unambiguous.

¶ 22. The law requires certain employers to provide their employees and specified government officials with 60 days' written notice of a "business closing" or "mass layoff". More specifically, the statute provides in relevant part:

> Subject to sub. (5) or (6), an employer who has decided upon a business closing or mass layoff in this state shall promptly notify the subunit of the department that administers s. 106.15, any affected employe, any collective bargaining representative of any affected employe, and the highest official of any municipality in which the affected employment

site is located, in writing of such action no later than 60 days prior to the date that the business closing or mass layoff takes place.

Wis. Stat. § 109.07(1m). The law is patterned after the federal Worker Adjustment and Retraining Notification Act (WARN), which establishes similar notification requirements in the event of a "plant closing" or "mass layoff" that results in an "employment loss." *See* 29 U.S.C. §§ 2101–09 (1999). The law applies to all business enterprises that employ 50 or more persons in this state. Wis. Stat. § 109.07(1)(d).

¶ 23. Before notice is required under the Wisconsin law, there must be an imminent "mass layoff" or "business closing." Wis. Stat. § 109.07(1m). These are defined terms. A "mass layoff" is "a reduction in an employer's work force that is not the result of a business closing and that affects. . .[a]t least 25% of the employer's work force or 25 employes, whichever is greater." Wis. Stat. § 109.07(1)(f)1. Jeld-Wen hired more than 75 percent of Norco's former employees, and so the State does not argue that a "mass layoff" occurred at the Hawkins plant. Instead, it characterizes the sale of the window factory as a "business closing."

¶ 24. A "business closing" is a "permanent or temporary shutdown of an employment site or of one or more facilities or operating units at an employment site or within a single municipality that affects 25 or more employes, not including new or low-hour employes." Wis. Stat. § 109.07(1)(b). The sale of the Hawkins plant, therefore, will amount to a "business closing" under the statute only if it has resulted in "a permanent or temporary shutdown of an employment site."

¶ 25. Words and phrases in a statute are interpreted in accordance with their ordinary and accepted meaning. *Perrin v. United States*, 444 U.S. 37, 42 (1979); *Meier v. Champ's Sport Bar & Grill, Inc.*, 2001 WI 20, ¶ 22, 241 Wis. 2d 605, 623 N.W.2d 94. A "shutdown" is "[a] cessation of operations or activity, as at a factory." *The American Heritage Dictionary of the English Language* 1674 (3d ed. 1992). A "site" is commonly understood to be "[t]he place where a structure or group of structures was, is, or is to be located. . .[t]he place or setting of something." *Id.* at 1688.

¶ 26. The State has stipulated that operations at the Hawkins plant never stopped at any point during the transfer of ownership; window manufacturing by former Norco employees continued there uninterrupted. Accordingly, no employment "site" was ever "shut down," either temporarily or permanently.

¶ 27. The State argues that even though there was no "shutdown" of the plant, there was a "shutdown" of Norco's employment site, because Norco ceased to be an employer there. But this is a strained reading of the statute, essentially rewriting it to apply whenever a particular business owner exits the scene, even if there is continuity of operation under the new management and no permanent or even temporary shutdown of the employment site.

¶ 28. The definitional language of Wis. Stat. § 109.07(1)(b) makes no reference to the "employer," only to the "employment site." The legislature has therefore chosen to limit the application of this statute to business closures of "employment sites," defined by reference to geography or location rather than ownership. It follows, then, that a transfer of business asset ownership does not constitute a "business closing"

unless it results in either a temporary or permanent shutdown in the operation of the employment site.

¶ 29. The surrounding references in the definition support this conclusion. The statute uses the phrase "shutdown of an employment site *or of one or more facilities. . .at an employment site or within a single municipality*." Wis. Stat. § 109.07(1)(b) (emphasis added). This reference to facilities "at an employment site or within a single municipality" reinforces the legislative focus on geographic location rather than ownership. A sale of business assets does not bring about a "business closing" within the meaning of this statute unless the old owner's departure or the new owner's arrival is accompanied by a temporary or permanent shutdown in the operation of the employment site.

¶ 30. The State points to one of the statute's exceptions as support for its argument that the sale of business assets constitutes a "business closing." Wisconsin Statute § 109.07(6) provides, among other things, an exception to liability for failure to give notice where the "business closing" or "mass layoff" is the result of the sale of part or all of an employer's business:

> An employer is not liable under this section for a failure to give notice to any person under sub. (1m), if the department determines that the business closing or mass layoff is the result of any of the following:
>
> (a) The sale of part or all of the employer's business, if the purchaser agrees in writing, as part of the purchase agreement, to hire substantially all of the affected employes with not more than a 6-month break in employment.

493

¶ 31. The State argues, apparently by implication, that the language of this exception demonstrates that business sales do in fact constitute "business closings" under the statute. We do not read the statute to mean that a business sale can *never* constitute a "business closing," only that some will and some won't, depending on the facts. A business sale that produces a temporary or permanent shutdown of the employment site is a "business closing," and in that event, the employer is excepted from liability for failure to give notice if the purchaser agrees in writing to hire substantially all the affected employees within six months. The exception does not modify the statutory definition of "business closing," which triggers the duty to give notice in the first place. Indeed, the exception is specifically tied to the definition, and by its terms applies only if a "business closing" or "mass layoff" is the result of the sale of all or part of an employer's business. Nor does the exception provide an alternate basis for liability under the statute. Because we conclude that the sale of Norco's assets to Jeld-Wen did not result in a "business closing" under the statute, we do not reach the issue of whether Jeld-Wen's agreement to make "reasonable efforts" to hire "substantially all" of Norco's employees was sufficient to bring the exception into play.

¶ 32. We note that Wis. Admin. Code § DWD 279.002 (Apr., 2001), entitled "Interpretation" specifies that "[w]henever possible, this chapter will be interpreted in a manner consistent with the Federal Worker Adjustment and Retraining Notification Act, 29 USC 2101 *et seq.*, the federal regulations and court decisions interpreting that Act to the extent that the provisions of federal and state law are the same." Both defendants cite federal cases interpreting the WARN Act in sup-

port of their positions. We agree with the State that none of these cases is particularly helpful to our analysis of the Wisconsin law.

¶ 33. First, WARN contains a provision that the Wisconsin law does not. 29 U.S.C. § 2101(b)(1), the "sales exception," excludes from the definition of "employment loss" a business sale that results in the "technical termination" of employment. *Int'l Oil, Chemical & Atomic Workers, Local 7–517 v. Uno-Ven Co.*, 170 F.3d 779, 783–84 (7th Cir. 1999). Most of the cited cases invoke the sales exception in one way or another and are therefore inapposite. *See Int'l Alliance of Theatrical & Stage Employees & Moving Picture Mach. Operators v. Compact Video Servs., Inc.*, 50 F.3d 1464, 1467–68 (9th Cir. 1995); *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1280–82 (10th Cir. 1994).

¶ 34. One case cited by counsel, *Reyes v. Greater Texas Finishing Corp.*, 19 F. Supp. 2d 709 (W.D. Texas 1998), does address the definition of "plant closing,"[5] but it does not do so within the context of a business sale and therefore does not assist our analysis. Finally, *Eret v. Continental Holding, Inc.*, 838 F. Supp. 358 (N.D. Ill. 1993), discusses the statutory term "shutdown," but in the context of the Employee Retirement Income Security Act (ERISA), *see* 29 U.S.C. § 1001–53, and so it, too, is inapplicable here.

¶ 35. The State has one final argument. It says that its interpretation of the statute best effectuates

---

[5] WARN uses the term "plant closing" rather than "business closing." A "plant closing" is defined as "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees." 29 U.S.C. § 2101(a)(2).

the legislature's intent, which was to give workers a reasonable opportunity to provide for the future of their families during periods of economic uncertainty. We cannot quarrel with this extrapolation of general legislative purpose, as it is apparent on the face of the statute. But what the State really asks for is an expansion of the statute's application to circumstances plainly not covered by its text. The legislature explicitly confined the applicability of this law to permanent or temporary shutdowns of employment sites. This language cannot reasonably be read to include a business asset sale that does not shut down an employment site but, rather, continues it.

■

¶ 36. We conclude, therefore, that the notice requirements of Wisconsin's Business Closing and Mass Layoff Law, Wis. Stat. § 109.07, did not apply in this case, because the sale of the window manufacturing plant in Hawkins, Wisconsin, did not involve a permanent or temporary shutdown of the employment site there. Accordingly, we affirm the court of appeals' decision reversing the judgment of the circuit court.

*By the Court.*—The decision of the court of appeals is affirmed.