Jonathan Lisowski,
Plaintiff-Appellant-Petitioner,

v.

Hastings Mutual Insurance Company,
Defendant-Respondent.

Supreme Court

*No. 2006AP2662. Oral argument October 13, 2008.
—Decided January 28, 2009.*

2009 WI 11

(Also reported in 759 N.W.2d 754.)

For the plaintiff-appellant-petitioner there were briefs by *Joel W. Brodd* and *Brodd Law Firm, L.L.C.*, Hudson, and oral argument by *Joel W. Brodd.*

For the defendant-respondent there was a brief by *Lee J. Fehr* and *Fehr Law Office,* Onalaska, and oral argument by *Lee J. Fehr.*

An amicus curiae brief was filed by *James A. Friedman, Linda S. Schmidt,* and *Godfrey & Kahn, S.C.,* Madison, on behalf of the Wisconsin Insurance Alliance, and oral argument by *James A. Friedman.*

An amicus curiae brief was filed by *Timothy A. Barber* and *Axley Brynelson, LLP,* Madison, on behalf of the Wisconsin Association for Justice.

¶ 1. N. PATRICK CROOKS, J. This is a review of an unpublished court of appeals per curiam opinion[1] that affirmed a circuit court decision dismissing a claim by Jonathan Lisowski against Hastings Mutual Insurance Company for underinsured motorists coverage under Lisowski's father's business auto policy.

¶ 2. The "for a covered auto" language on which this case turns is substantive language that appears in several places in the policy, including the endorsement

---

[1] *Lisowski v. Hastings Mut. Ins. Co.*, unpublished slip op. (Wis. Ct. App. Jan. 31, 2008).

page. When the provisions of the policy are read together, the language is not ambiguous. We agree with the reasoning of *Crandall v. Society Insurance,* 2004 WI App 34, 269 Wis. 2d 765, 676 N.W.2d 174, and we believe it controls here. Like *Crandall,* this case concerns an underinsured motorist (UIM) endorsement to a business auto policy; also, like *Crandall,* it involves an injured party who is not the named insured, a driver who is not an insured under the policy, and a vehicle not listed in the policy. Even if the covered auto language is characterized as an exclusion in the UIM endorsement, it is valid when the conditions in Wis. Stat. § 632.32(5)(j) (2005–06)[2] are satisfied, as they are here. We therefore affirm the decision of the court of appeals.

## I. BACKGROUND

¶ 3. This case involves a family with multiple personal and business vehicles insured under policies purchased from three companies. Dennis Lisowski, a farmer, owned a Chevy Lumina, a Chevy pickup, a Dodge Avenger, and a Mack semi tractor. He bought insurance policies for the Lumina and the pickup from First Community Insurance Company but allowed the policies to lapse. He had purchased the Avenger for his son, Jonathan Lisowski,[3] who bought insurance for the car from Northern Progressive Insurance Company but bought no UIM coverage with that policy. The Mack semi tractor, which Dennis Lisowski used exclusively for farming, was covered by a business auto policy

---

[2] As explained more fully below, Wisconsin Stat. § 632.32(5)(j) permits insurers to exclude coverage under certain circumstances. All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

[3] Dennis Lisowski testified that he considered Jonathan the owner of the Avenger and had intended to transfer the title to him but had not gotten around to doing so before the accident.

issued by Hastings Mutual Insurance Company (Hastings Mutual), which included a UIM endorsement.

¶ 4. That business auto policy is the policy against which the claim was made. The car accident involving the Avenger, and giving rise to this claim, occurred January 18, 2004. Jonathan Lisowski was a passenger, and a friend of his was driving at the time of the accident.

¶ 5. Jonathan Lisowski sued Hastings Mutual, claiming coverage under the UIM endorsement to the business auto policy on his father's semi tractor. He claimed coverage on the grounds that, as a family member of the named insured, he was entitled to coverage for any injury caused by an underinsured motorist. Hastings Mutual denied coverage on the grounds that the UIM policy applied to covered autos only.

¶ 6. Following a hearing, the Buffalo County Circuit Court, the Honorable James Duvall presiding, dismissed the complaint. The circuit court found that: (1) Dennis Lisowski was the owner of the Avenger; (2) Jonathan Lisowski was a passenger in the Avenger when he was injured; (3) Jonathan Lisowski was an insured under the UIM endorsement of the Hastings Mutual policy; (4) the Avenger was an underinsured motor vehicle under the terms of the UIM endorsement; and (5) the Avenger was not a covered auto in the Hastings Mutual policy. Relying on *Crandall,* the circuit court concluded that "the introductory language 'for a covered auto' in the UIM endorsement required Jonathan Lisowski to be an occupant of a covered auto in order to trigger UIM coverage" under the Hastings Mutual policy. Because the Avenger was not a covered auto under the policy, the court ordered the case dismissed.

¶ 7. Jonathan Lisowski appealed. On August 23, 2007, the court of appeals certified the appeal to this court, but we did not grant the certification. In an

unpublished per curiam opinion, the court of appeals then affirmed the circuit court's decision, on the same grounds: that *Crandall* required the "for a covered auto" language to be given effect, and the Hastings Mutual policy therefore did not provide UIM coverage. *Lisowski v. Hastings Mut. Ins. Co.*, unpublished slip op., ¶ 9 (Wis. Ct. App. Jan. 31, 2008).

¶ 8. Jonathan Lisowski filed a petition for review, and on May 13, 2008, review was granted.

## II. STANDARD OF REVIEW

¶ 9. Interpretation of an insurance policy presents a question of law that we review independently. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597 (1990). If words or phrases in a policy are susceptible to more than one reasonable construction, they are ambiguous. *Id.* at 811. In such a case, we construe the policy as it would be interpreted by a reasonable insured. *Holsum Foods v. Home Ins. Co.*, 162 Wis. 2d 563, 568–69, 469 N.W.2d 918 (Ct. App. 1991). If the policy is not ambiguous, we will not rewrite it by construction to impose liability for a risk the insurer did not contemplate. *Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶ 10, 245 Wis. 2d 134, 628 N.W.2d 916. "Applying the canons of interpretation for insurance contracts . . . we interpret the policy based on what a reasonable person in the position of the insured would have understood the words to mean." *Mau v. North Dakota Ins. Reserve Fund*, 2001 WI 134, ¶ 17, 248 Wis. 2d 1031, 637 N.W.2d 45. Where it is necessary to apply a statute, the review is de novo. *State v. T.J. Int'l, Inc.*, 2001 WI 76, ¶ 20, 244 Wis. 2d 481, 628 N.W.2d 774.

## III. ANALYSIS

¶ 10. There is no dispute that the vehicle involved in the accident was not a covered vehicle under the Hastings Mutual business auto policy. Nor is there any dispute that Jonathan Lisowski was an insured as a family member of the named insured, Dennis Lisowski. What the parties dispute is whether Jonathan Lisowski was entitled to coverage as an insured regardless of where he was at the time he was injured by the underinsured motorist. Jonathan Lisowski contends that even if Hastings Mutual could have excluded coverage for him under these circumstances without running afoul of Wisconsin law, the policy was not written in such a way that it actually and unambiguously did so. He points to a statement describing UIM coverage as "all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle.' " Jonathan Lisowski also points to the UIM endorsement's language identifying insureds. Where the named insured is an individual, the endorsement states, insureds are "[t]he Named Insured and any 'family members' " and "[a]nyone else 'occupying' a covered 'auto'. . . ." Because the family member provision contains no mention of a covered auto, he contends, there is no requirement that a family member of the named insured be in a covered auto in order for coverage to apply. He also notes that none of the endorsement's exclusions applies.

¶ 11. Hastings Mutual points to the sentence at the top of the UIM endorsement that begins, "For a covered 'auto'. . . ." It contends that this language mirrors the "covered auto" language in the main body of the policy and limits UIM coverage accordingly. As for the exclusions, Hastings Mutual argues that they operate

only to limit coverage, not create it, and that the exclusions are relevant only after coverage is established.

A. The key language

¶ 12. The language on which this case turns is found in the policy's declarations page and in the endorsement for UIM coverage. On the declarations page, Item One lists Dennis Lisowski as the named insured. Item Two, the Schedule of Coverages and Covered Autos, says, "Each of these coverages will apply only to those 'autos' shown as covered 'autos'. 'Autos' are shown as covered 'autos' for a particular coverage by the entry of one or more of the symbols from the covered auto section of the business auto coverage form next to the name of the coverage."[4] The symbol from the business auto coverage form that appears next to the UIM coverage on the list of coverages under Item Two is "07." The business auto coverage form indicates that where "07" is used, "any auto" means "Specifically Described 'Autos'." That is further described as "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown . . . ." In Item Three, the "Schedule of Covered Autos You Own" lists one vehicle: the 1985 Mack semi tractor. The premium for underinsured motorist coverage for that vehicle is $30.

¶ 13. Turning to the endorsement page, one finds the words, "For a covered 'auto' licensed or principally garaged . . . in[] Wisconsin, this endorsement modifies

---

[4] For each type of coverage (liability, auto medical payments, uninsured motorists, underinsured motorist, physical damage, and comprehensive), the Schedule of Coverages and Covered Autos also lists the policy limits and the premium.

insurance provided under the following: Business Auto Coverage Form." On the same page, in section A.1., the policy reads, "We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of the 'underinsured motor vehicle.' " In section B.1., the endorsement states that where the named insured is an individual, which is the case here, insureds are "[1]a. The Named Insured and any 'family members' " and "[1]b. Anyone else 'occupying' a covered 'auto'. . . ."

¶ 14. There is no dispute that Jonathan Lisowski, as a family member, is an insured under his father's business auto policy and under the UIM endorsement. The Declarations page designates Dennis Lisowski as an individual, and the Endorsement, in section B.1.a., says the named insured and any "family members" are insureds when the named insured is designated in the Declarations as an individual.

B. Discussion

¶ 15. Jonathan Lisowski advances a half-dozen reasons the business auto policy his father held on the 1985 Mack semi tractor should provide coverage for the injuries he sustained as a passenger in the Avenger, even though it is not a covered vehicle:

(1) the "for a covered auto" language in the UIM endorsement is not part of the policy; it is nothing more than introductory language and should not be given effect;

(2) the UIM endorsement changed the "covered auto" requirement in the declarations page and trumps any conflicting language elsewhere in the policy;

397

(3) Hastings Mutual is wrongly seeking to have the court either add words to the policy or write into the policy a permissible exclusion under Wis. Stat. § 632.32(5)(j) that Hastings Mutual itself omitted;

(4) the "for a covered auto" language should be treated as an exclusion and construed narrowly against the insurer;

(5) the introductory language is contextually ambiguous and thus must be construed in Jonathan Lisowski's favor; and, finally,

(6) *Crandall* should not apply here because it is factually distinguishable and its holding is overbroad.

¶ 16. Hastings Mutual responds that the "for a covered auto" language *is* part of the policy, and, if characterized as an exclusion, is a proper one; that there is no ambiguity; and that *Crandall* is both rightly decided and applicable.

¶ 17. Jonathan Lisowski first contends that the "for a covered auto" language is not actually a part of the policy because it is merely "introductory language." He contends that this court's decision in *Mau*, 248 Wis. 2d 1031, rests on the premise that prefatory headings do not determine coverage.[5]

¶ 18. *Mau* concerned a German tourist, Wolfgang Mau, who had purchased an underinsured motorist insurance policy for a rental car. While traveling, he was involved in a minor accident on an icy road, and a

---

[5] Jonathan Lisowski also proffered an affidavit from an editor of an insurance industry trade publication in support of his position that the introductory language cannot modify the coverage terms. For the reasons stated herein, we do not find the editor's affidavit persuasive.

deputy stopped to assist him. At the deputy's request, Mau sat in the squad car while towing arrangements were made for the disabled vehicle. As Mau waited, a passing driver lost control and crashed into the squad car; Mau sustained serious injury.

¶ 19. To determine whether there was coverage under the policy Mau had purchased for the rental car, we first determined that "Mau [was] a named insured under the [UIM] policy." We then determined that the occupancy requirement in the UIM endorsement was not valid under Wis. Stat. § 632.32 (1995–96) because the statute prohibits an exclusion for a named insured. *Mau,* 248 Wis. 2d 1031, ¶ 1.

¶ 20. *Mau* is inapposite here; the footnote to which Jonathan Lisowski cites says merely, "[R]ather than relying on the *heading* to determine who is a named insured, we look to the substance of Endorsement #1, the definitions, to define the named insured." *Id.,* ¶ 14 n.4 (emphasis added). The first question in *Mau* was whether the person seeking coverage was a named insured, and we were presented with a policy that was ambiguous in defining a named insured. There, where the declarations page referred to the endorsement for the named insured ("Named Insured: See Endorsement #1" (*Id.,* ¶ 10)), we did nothing more than read all of "Endorsement #1" to find the answer. Nothing in that approach requires us to ignore language in the Hastings Mutual policy. Unlike in *Mau,* the language we look to here is substantive language, not a heading.[6]

¶ 21. Jonathan Lisowski's argument that the endorsement changes the policy and trumps any language

---

[6] In this case, the heading on the endorsement page— "Wisconsin Underinsured Motorists Coverage"—is not relevant

to the contrary in the declarations page is easily disposed of. It's true that the endorsement says, at the top of the page, "This endorsement changes the policy. Please read it carefully." It is also true that an endorsement is "a provision added to an insurance contract altering its scope or application that takes precedence over printed portions of the policy in conflict therewith." *Muehlenbein v. West Bend Mut. Ins. Co.*, 175 Wis. 2d 259, 265, 499 N.W.2d 233 (Ct. App. 1993). The endorsement page similarly notes, "With respect to coverage provided by this endorsement, the provisions of the coverage form apply unless modified by the endorsement."

¶ 22. Because the endorsement itself contains the "for a covered auto" requirement, there is no conflict between the endorsement and the rest of the policy. For the same reason, there is no way to read the endorsement as modifying the provisions of the Coverage Form to expunge the "covered auto" requirement. As noted above, Jonathan Lisowski contends that because the definition in section B.1.a., which defines an insured as "[t]he Named Insured and any 'family members,' " contains no mention of a covered auto, the requirement of a covered auto does not apply to a family member of the named insured. He notes that section B.1.b., which applies to "anyone else 'occupying' a covered 'auto,' " does impose the requirement. These two provisions, however, merely parrot the statute, which dictates what a policy must cover. *See* Wis. Stat. § 632.32(6)(b)1. ("No policy may exclude from the coverage afforded or benefits provided [] [p]ersons related by blood, marriage or adoption to the insured."); and Wis. Stat. § 632.32(3)(a)

---

to the question of whether this business policy provides coverage when the injured person is neither a named insured nor an occupant of a covered vehicle.

("[E]very policy ... issued to an owner shall provide that [] [c]overage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy . . . ."). These provisions, which are included pursuant to statute, cannot be read as creating UIM coverage for Jonathan Lisowski where the policy, read as a whole, explicitly denies it.

■■ ¶ 23. Jonathan Lisowski contends that for this court to deny coverage here we must rewrite the policy in one of two ways, either (1) by adding in words such as "who is occupying a covered auto" to the definition of an insured; or (2) by inserting an exclusion permitted under Wisconsin statutes that the insurer failed to put into the policy explicitly enough.[7] We disagree. As we explained above, the language that requires denying coverage is already found in the declarations page and in the endorsement. First, the endorsement page begins

---

[7] Wisconsin Stat. § 632.32(5)(j) permits insurers to exclude coverage under certain circumstances:

> A policy may provide that any coverage under the policy does not apply to a loss resulting from the use of a motor vehicle that meets all of the following conditions:

> 1. Is owned by the named insured, or is owned by the named insured's spouse or a relative of the named insured if the spouse or relative resides in the same household as the named insured.

> 2. Is not described in the policy under which the claim is made.

> 3. Is not covered under the terms of the policy as a newly acquired or replacement motor vehicle.

Jonathan Lisowski argues, without citation to authority, that such an exclusion is permissible only "if [the insurer] had specified the three requirements of Wis. Stat. § 632.32(5)(j) in the express written exclusion clauses of the UIM endorsement." There is, however, no such requirement in the statute.

with the words "For a covered 'auto,' " so there is no need to add the words to the endorsement. Second, the policy, as written, excludes any vehicle owned by the named insured that is neither described in the policy nor covered as a newly acquired vehicle. In the policy, one finds on the Declarations page the "Schedule of Coverages and Covered Autos" (with "07" in the column titled "Covered Autos") and the "Schedule of Covered Autos You Own," neither of which include the Avenger. The business auto coverage form is the cross-reference for the designation of "07," which explicitly limits the coverage to "Specifically Described 'Autos.' " That was a decision made by Dennis Lisowski when he bought the policy; there are other levels of coverage available which provide coverage for any autos owned by the policyholder, even those the policyholder "acquire[s] ownership of after the policy begins." Jonathan Lisowski urges us to characterize the covered auto language as an exclusion. We agree with him that such an exclusion, sometimes called a "drive other car exclusion," can be valid only where it complies with the three specific requirements of Wis. Stat. § 632.32(5)(j). *See Blazekovic v. City of Milwaukee*, 2000 WI 41, 234 Wis. 2d 587, 610 N.W.2d 467. Even if the covered auto language is so characterized, however, it is valid because it complies with the three specific requirements of the statute: It is owned by the named insured, is not described in the policy under which the claim is made, and is not covered as a newly acquired or replacement motor vehicle. Wis. Stat. § 632.32(5)(j) (permitting insurers to make such exclusions).[8]

---

[8] Given this statutory scheme, the dissent's focus on the distinctions between Class I and Class II insureds is misplaced, where, as here, it is clear under the language of the policy as well as under the circumstances presented that there is no coverage; therefore, we do not find that distinction significant.

¶ 24. Jonathan Lisowski asserts that *Mau* compels us to construe the "for a covered auto" language as an exclusion and to construe it narrowly against the insurer. In *Mau,* one of the questions before this court was whether an "occupancy requirement," the equivalent of a "covered auto requirement," could apply against a named insured under Wis. Stat. § 632.32(6). In order to apply the statute, which addresses what a policy may not exclude, we acknowledged that a requirement can be the functional equivalent of an exclusion. *Mau,* 248 Wis. 2d 1031, ¶ 33. Jonathan Lisowski contends that the same principle applies here. Such an approach does not change the outcome. Even where we construe language narrowly, we are still required to give meaning to the terms. Contrary to his assertion, it is not necessary to give the "for a covered auto" language an "overly broad interpretation" to reach the conclusion that it applies here. Even construing the requirement as an exclusion, consistent with our approach in *Mau,* we reach the same result.[9]

---

[9] Jonathan Lisowski does not claim that the policy violates Wis. Stat. § 632.32(6)(b)2. *Mau v. North Dakota Insurance Reserve Fund,* 2001 WI 134, 248 Wis. 2d 1031, 637 N.W.2d 45, and *Ruenger v. Soodsma,* 2005 WI App 79, 281 Wis. 2d 228, 695 N.W.2d 840, addressed whether an occupancy requirement for a named insured violated Wis. Stat. § 632.32(6)(b)2., which states:

(b) No policy may exclude from the coverage afforded or benefits provided:

. . . .

2.a. Any person who is a named insured or passenger in or on the insured vehicle, with respect to bodily injury, sickness or disease, including death resulting therefrom, to that person.

In both cases, the answer was that an occupancy requirement violated the statute because both cases involved injured parties who were named insureds. In this case, that statute is

██

¶ 25. Jonathan Lisowski asserts that a discrepancy between the endorsement's statements creates ambiguity—the introductory language mentions covered autos and the coverage definitions do not. If words or phrases in a policy are susceptible to more than one reasonable construction, they are ambiguous. *Mau,* 248 Wis. 2d 1031, ¶ 13. However, we do not read policy terms in isolation. As we noted in *Mau,* "[W]e must give meaning to all provisions in the insurance policy." *Id.,* ¶ 20 n.7 (citing 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 21:19 (Dec. 1995) ("All its words, parts, and provisions must be construed together as one entire contract, each part interpreted in the light of all the other parts, in connection with the risk or subject matter.")). The language in the endorsement which refers to "covered auto" is consistent with the language in the declarations page,[10] which also refers to "covered autos." The language links the endorsement page to the declarations page. Having considered the position taken by the dissent, we find it more persuasive to read the "for a covered auto" language as a key to the question of coverage.

██

¶ 26. It is true, as Jonathan Lisowski points out, that none of the endorsement's exclusions applies.[11] But

not implicated because Jonathan Lisowski is neither a "named insured" nor "[a] passenger in or on the insured vehicle."

[10] *See Dowhower v. West Bend Mut. Ins. Co.,* 2000 WI 73, ¶ 40, 236 Wis. 2d 113, 613 N.W.2d 557 (Bradley, J., concurring) ("Arguably, the Declaration page is the most crucial section of the policy for the typical insured . . . .").

[11] The exclusions apply, for example, when the named insured is occupying a vehicle he or she owns that is not a covered auto; when a family member is occupying a vehicle that the named insured's family member owns; and when a family

that makes no difference. An exclusion is relevant only in a context where coverage exists. *Crandall,* 269 Wis. 2d 765, ¶ 16 n.2 ("The Crandalls raise additional arguments to establish that [their daughter] is an insured and that none of the UIM exclusions applies. However, those arguments do not create coverage . . . . Rather, coverage must first be established. Then, if the policy provides coverage we would, for example, analyze whether any exclusions apply."); *Bulen v. West Bend Mut. Ins. Co.,* 125 Wis. 2d 259, 263, 371 N.W.2d 392 (Ct. App. 1985) ("Such clauses subtract from coverage rather than grant it.").

¶ 27. Jonathan Lisowski and Hastings Mutual differ as to the applicability of *Crandall* to this case. *Crandall* involved a policyholder who had purchased a business policy for his garage operations. The policy contained a UIM endorsement. When the policyholder's daughter was injured in an accident, in a vehicle driven by a friend, the daughter sought coverage under her father's UIM coverage. The endorsement language, as here, included the words, "For a covered 'auto' licensed or principally garaged, or 'garage operations' conducted in Wisconsin, this endorsement modifies insurance . . . ." *Crandall,* 269 Wis. 2d 765, ¶ 2.

¶ 28. This case mirrors *Crandall*'s facts in relevant ways. Crandall involved a businessowner's garage operations policy; here, the policy involved is a business auto policy. The cover of the policy here notes in large bold type that it is a "Business Auto Policy." In both cases, an

---

member is occupying a vehicle owned by the named insured that has UIM coverage under another policy. Jonathan Lisowski fit none of those descriptions. He was not the named insured. He was a family member occupying a car (the Avenger) owned by the named insured (Dennis Lisowski). The car had no UIM coverage under any other policy.

insured, but not the named insured, was injured while a passenger in an underinsured vehicle not listed in the policy. The relevant language in the policies' endorsements is identical.

¶ 29. We agree with the court of appeals' reasoning in *Crandall* that:

> [T]his is a policy for Crandall's business, not for him as an individual. . . . The policy is described in various places within the policy as a businessowner's policy and a garage policy. It would be unexpected for this kind of policy to cover Crandall and his family under circumstances wholly unrelated to Crandall's business.

*Id.,* ¶ 9.

## IV. CONCLUSION

¶ 30. The "for a covered auto" language on which this case turns is substantive language that appears in several places in the policy, including the endorsement page. When the provisions of the policy are read together, the language is not ambiguous. We agree with the reasoning of *Crandall,* 269 Wis. 2d 765, and we believe it controls here. Like *Crandall,* this case concerns an underinsured motorist (UIM) endorsement to a business auto policy; also, like *Crandall,* it involves an injured party who is not the named insured, a driver who is not an insured under the policy, and a vehicle not listed in the policy. Even if the covered auto language is characterized as an exclusion in the UIM endorsement, it is valid when the conditions in Wis. Stat. § 632.32(5)(j) are satisfied, as they are here. We therefore affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 31. ANN WALSH BRADLEY, J. (*dissenting*). I agree with the majority that the dispute here is "whether Jonathan Lisowski was entitled to coverage as an insured *regardless of where he was at the time he was injured* by the underinsured motorist." Majority op., ¶ 10 (emphasis added). Based upon what I refer to as Rule 101 of underinsured motorist coverage (UIM), the answer is undoubtedly: yes.

¶ 32. By Rule 101, I mean that basic to the nature of underinsured motorist coverage is that it is "personal and portable" for resident family members of the named insured. As a learned treatise on Wisconsin insurance law explains: "Keep in mind that UIM as well as UM coverage is personal and portable and follows Class I insureds [resident family members of the named insured]." 1 Arnold P. Anderson, *Wisconsin Insurance Law* § 4.14 (5th ed. 2004).

¶ 33. What does it mean to be "personal and portable"? "Personal" means that the coverage follows the person and not the vehicle, and "portable" means that it follows the person regardless of where he is at the time of the accident. Unlike general automobile liability policies which insure a specific auto, UIM policies insure the person.

¶ 34. We have previously explained that coverage for Class I insureds follows the insured "wherever he may go, be it 'in an unowned vehicle, on a motorcycle, on a bicycle, whether afoot or on horseback or even on a pogo stick.'" *Teschendorf v. State Farm Ins. Co.,* 2006 WI 89, ¶ 25, 293 Wis. 2d 123, 717 N.W.2d 258 (*quoting Welch v. State Farm Mut. Auto Ins. Co.,* 122 Wis. 2d 172, 181, 361 N.W.2d 680 (1985)).[1]

---

[1] While *Teschendorf* dealt with an uninsured motorist (UM) policy, its analysis applies to UIM policies as well. *See* 1 Arnold P. Anderson, *Wisconsin Insurance Law* § 4.14 (5th ed. 2004).

¶ 35. The majority correctly acknowledges that there is no dispute that, as a resident family member of the named insured, Jonathan is a Class I insured. Majority op., ¶ 10. Thus, I conclude based on Rule 101 (UIM coverage is "personal and portable") that Jonathan is covered under his UIM policy regardless of where he was at the time he was injured.

¶ 36. The problem with the majority opinion is twofold: (1) by ignoring this basic tenet of UIM coverage, it collapses the distinction between Class I and Class II insureds, requiring all insureds to be occupants of covered autos; and (2) by concluding that the language of the policy is clear and unambiguous, it contradicts a parade of cases from other courts and avoids the cannon of construction that ambiguity is decided in favor of the insured.

I

¶ 37. The majority concludes that occupancy of a covered auto is a requirement for UIM coverage under this policy. In reaching this conclusion the majority determines that UIM coverage for Class I insureds is neither "personal" nor "portable."

¶ 38. UIM policies traditionally cover three distinct classes of insureds. *Wisconsin Insurance Law, supra,* § 4.11. The named insured and any relatives who reside in the named insured's household are Class I insureds. *Id.* Class II insureds, or "occupant insureds," include anyone else while occupying a covered auto. *Id.* Finally, anyone who is entitled to a derivative claim is a Class III insured. *Id.* In Wisconsin as well as nationally, UIM coverage is personal and portable for Class I insureds.[2]

---

[2] *Wisconsin Insurance Law, supra,* § 4.14; *see also* Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured*

¶ 39. The provisions of Jonathan's father's UIM policy correspond with this understanding of UIM insurance. The initial grant of coverage states that Hastings will "pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle.' " The policy further defines three distinct classes of insureds:

 I. The Named Insured and any [resident] "family members."

 II. Anyone else "occupying" a covered "auto" or temporary substitute for a "covered auto". . . .

 III. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

¶ 40. The definition of Class I insureds contains no occupancy requirement. The only insureds who must occupy a covered auto to be afforded coverage are Class II insureds. Under the majority's analysis, however, there is no distinction between Class I and Class II insureds—both must be occupants of a covered vehicle in order to receive coverage.

¶ 41. An established principle of policy interpretation is that courts should read a policy to give meaning to every provision, avoiding constructions that render portions of the policy meaningless. *Isermann v. MBL Life Assur. Corp.*, 231 Wis. 2d 136, ¶ 25, 605 N.W.2d 210 (Ct. App. 1999). If the language is given the effect advanced by the majority, the definition of Class I insureds is rendered meaningless here. Why would the policy differentiate between Class I insureds and Class II insureds if there is no distinction?

Motorist Insurance § 33.2 (3d ed. 2005) ("Most significantly, clause/class (1) insureds do not have to be an occupant of an insured vehicle when an injury occurs in order to be covered.").

¶ 42. Reading this policy to give meaning to every provision, I conclude that there is a distinction between Class I and Class II insureds—Class I insureds need not occupy a covered auto in order to be covered under the UIM endorsement. As a Class I insured, Jonathan's UIM coverage is personal and portable and he is entitled to coverage wherever he may go.

## II

¶ 43. After eschewing this basic principle of UIM coverage, the majority embarks upon a determination of whether the language of the policy is ambiguous or unambiguous. The lynchpin of the majority's analysis is that the language of the policy is clear and unambiguous. If, however, the majority concluded that the language was ambiguous, it would have to decide the case in favor of coverage for Jonathan. Ambiguity in an insurance policy must be construed in favor of coverage. *Folkman v. Quamme,* 2003 WI 116, ¶ 13, 264 Wis. 2d 617, 665 N.W.2d 857.

¶ 44. The problem with the majority opinion is that it remains steadfast to its conclusion that the language is clear and unambiguous, disregarding the conclusions of court after court examining the same language. Indeed, a parade of courts has examined identical language and reached a conclusion opposite to the majority.

¶ 45. Both the circuit court and the court of appeals found Jonathan's argument that the language was ambiguous to be persuasive. Nonetheless, both courts were bound to follow the holding of *Crandall ex rel. Johnson v. Society Insurance,*[3] in which the court of appeals determined that similar language unambiguously restricted UIM coverage to occupants of covered

---

[3] 2004 WI App 34, 269 Wis. 2d 765, 676 N.W.2d 174.

autos. Both courts struggled to reconcile the obvious ambiguity in this UIM endorsement with the unequivocal holding in *Crandall* that it was unambiguous.

¶ 46. To begin, the circuit court stated that Jonathan's legal arguments and secondary authorities were persuasive: "I would be tempted to be sympathetic to the language—to a finding that it does create ambiguity." Nonetheless, the court concluded—as it must—that it was constrained to follow *Crandall*.

¶ 47. Initially, the court of appeals certified the question to this court, noting that "[t]he introductory provision *Crandall* relied on is plainly inconsistent with the provisions that follow it" and asked us to modify, limit, or overrule *Crandall*. We did not accept certification, and the court of appeals ultimately determined that under *Cook v. Cook*,[4] it must follow the conclusion of the *Crandall* court, even though it disagreed with it. *Lisowski v. Hastings Mut. Ins. Co.*, No. 2006AP2662, unpublished slip op., ¶ 1 (Ct. App. Jan. 31, 2008).

¶ 48. Likewise, the court of appeals in *Ruenger v. Soodsma,* 2005 WI App 79, 281 Wis. 2d 228, 695 N.W.2d 840, struggled to reconcile *Crandall*'s unequivocal holding with plainly inconsistent policy language. Ruenger, the insured, argued that identical introductory language as here created ambiguity when read in conjunction with the coverage section of the UIM endorsement. *Id.*, ¶ 34. The court acknowledged that the coverage section of the UIM endorsement, read alone, provided coverage for the Class I insured while occupying an uncovered vehicle. *Id.*, ¶ 31. Noting that there was merit to Ruenger's ambiguity argument, the court concluded that nonetheless, it was bound by the holding in *Crandall*. *Id.*, ¶ 34.

---

[4] 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (stating that the court of appeals may not overrule, modify, or withdraw language from a prior court of appeals decision).

¶ 49. Courts around the country have examined identical language and have uniformly determined that it is ambiguous. *See Reisig v. Allstate,* 645 N.W.2d 544, 550–51 (Neb. 2002) (finding ambiguity because the terms of the UIM endorsement conflicted with the introductory language "for a covered auto"); *Bushey v. N. Assurance Co.,* 766 A.2d 598, 603 (Md. Ct. App. 2001) (same); *see also Stoddard v. Citizens Ins. Co.,* 643 N.W.2d 265, 269 (Mich. Ct. App. 2002) (determining that a similar UIM endorsement unambiguously provided coverage to a Class I insured even though the insured did not occupy a covered auto).

¶ 50. It should give the majority pause that in all of these cases, the courts have determined that identical language was, at the very least, contextually ambiguous. Nonetheless, the majority unhesitatingly turns a blind eye to this overwhelming weight of authority, clings to *Crandall,* and concludes that the language of the policy is clear and unambiguous. Wisconsin stands alone in this interpretation.

¶ 51. The majority determines that there is no ambiguity because the covered auto language in the UIM endorsement is consistent with the declarations page of the liability policy. Majority op., ¶ 25. It ignores, however, the obvious conflict between the covered auto language and the grant of coverage in the UIM endorsement. In focusing on the symmetry between the declarations page and the "for a covered auto" language, the majority skirts the established principle of insurance policy construction that ambiguity must be construed in favor of coverage.

¶ 52. Finally, as requested by the court of appeals in its certification memorandum to this court, I would take this opportunity to modify *Crandall.* The court of appeals correctly explained that "[t]he introductory

provision *Crandall* relied on is plainly inconsistent with the provisions that follow it." Our interpretation should comport with the reality observed by other courts that have examined the same language—the policy language is ambiguous.

¶ 53. Although the majority proclaims that the language is clear and unambiguous, it does not necessarily make it so. Instead, all too often this court finds policy language unambiguous which then obviates the need for further meaningful analysis. I am reminded of the words of a nonsense poem by Lewis Carroll: "I have said it thrice: What I tell you three times is true."[5]

¶ 54. Just because Wisconsin courts thrice proclaim that this language is clear and unambiguous, it makes it no more true than was the proclamation in Carroll's poem. For the above reasons, I would conclude that Jonathan's injuries are covered under his father's UIM policy. This interpretation is consistent with established principles of UIM coverage and of insurance policy interpretation. Accordingly, I respectfully dissent.

¶ 55. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent.

---

[5] "Just the place for a Snark!" the Bellman cried,
As he landed his crew with care;
Supporting each man on the top of the tide
By the finger entwined in his hair.

"Just the place for a Snark! I have said it twice:
That alone should encourage the crew.
Just the place for a Snark! I have said it thrice:
What I tell you three times is true."

Lewis Carroll, "The Hunting of the Snark" (1876).